STEPHEN J. WINDHORST, Judge.
12Appellants, Julia and Martin' Marino, seek review of the trial court’s , judgment granting appellees’, Gulf Coast Bank and Trust Company and John Doe (collectively “Gulf Coast Bank”), motion for summary judgment. For the reasons that follow; we affirm. ■ ■
FACTS
The following'facts ‘are undisputed for the purpose of appellees’ motion for summary judgment.[1] The Jefferson Parish Sheriffs Office (“JPSO’.’) arrested Salva-dore Marino, the adult, son of appellants, for drug-related crimes and failure to pay taxes. JPSO executed a search warrant on Toker’s, a business owned and operated by Salvadore Marino. On the same day, JPSO contacted Gulf Coast Bank to confirm- that checks which had been recovered belonged to an account at Gulf Coast Bank in the name'of Toker’s, that the account number on the checks was correct, and that the-account was still active. John Doe, an employee of Gulf Coast Bank, *155 initiated a second telephone conversation with JPSO wherein he allegedly ^^misinformed Agent Stacy- Taranto that safe deposit box *****, located at Gulf Coast Bank, was also in the name of Toker’s, and that it had recently been accessed by appellant, Martin Marino. JPSO obtained a search warrant for the safe deposit box based on this incorrect information and seized $127,730.00 in currency from the- safe deposit box. -In fact, the safe deposit-box was in the name of appellants and their adult son, Salvadore -Marino, not in the name of Token's.
Appellants filed this petition for damages contending appellees were liable for the disclosure of appellants’ financial information in bad faith'under state and federal law and for negligent misrepresentation. Appellees subsequently filed this motion for summary judgment arguing that they are immune from liability for communications or disclosures made to any law enforcement agency under the facts as alleged, pursuant to the Right to Financial Privacy Act (“RFPA”) and the Annunzio-Wylie Anti-Money Laundering Act (“the Act”). On February 12, 2015, the trial court granted appellees’ motion for summary judgment. This appeal followed.
LAW AND ANALYSIS
Appellate courts review the granting of a summary judgment de novo using the same criteria governing the trial court’s consideration of whether summary judgment is appropriate. Duncan v. U.S.A.A. Ins. Co., 06-363 (La.11/29/06), 950 So.2d 544, 547; Ghergich v. Toye, 14-300 (La.App. 5 Cir. 10/29/14), 164 So.3d 238, 240. A motion for summary judgment should be granted “if the pleadings, depositions, answers to interrogatories,, -and, admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966B(2). If the moving party shows there is an absence of factual support for one or more elements essential to the Radverse party’s claim, action or defense, then the non-moving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial.' La. C.C.P. art. 966C(2). If the non-moving party fails to satisfy his burden, there is no genuine issue of material fact, and summary judgment should be granted. La. C.C.P. arts. 966 and 967; Parish of Jefferson v. Davie Shoring, Inc., 14-701 (La.App. 5 Cir. 02/11/15), 167 So.3d 925, 929.
When summary judgment is granted in the context of statutory interpretation, there are no material issues of fact in dispute and the ■ sole issue before the reviewing court is a question of law as to the correct interpretation of the statute at issue. State v. La. Land & Exploration Co., 12-0884 (La.01/30/13), 110 So.3d 1038, 1044. Legislation is the solemn expression of the will of-the legislature. La.C.C. art. 2; Milbert v. Answering Bureau, Inc., 13-0022 (La.06/28/13), 120 So.3d 678, 684. The determination of the legislature’s will must start with the language of the statute itself. La. Land & Exploration Co., 110 So.3d at 1044 (citing McGlothlin v. Christus St. Patrick Hosp., 10-2775 (La.07/01/11), 65 So.3d 1218, 1227). The words must be interpreted as they are generally understood. La. C.C. art. 11. When the words of a statute are clear and unambiguous, and the application of the law does not lead to absurd consequences, the statute, should be applied as written and no further efforts should be .made to determine the legislature’s intent. La. C.C. art. 9; La. R.S. 1:4; In re Clegg, 10-0323 (La.07/06/10), 41 So.3d 1141, 1154; Ghergich, 164 So.3d at 242. When the *156 language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. La. C.C. art. 10; Red Stick Studio Development, L.L.C. v. State ex rel. Dept. of Econ. Dev., 10-193 (La.01/19/11), 56 So.3d 181, 188.
| Jn their sole assignment of error, appellants contend that the trial court erred in granting appellees’ motion “by finding that 31 U.S.C. § 5318 grants total blanket immunity to financial institutions for any and all disclosures made, even those not made in good faith.”
Appellants contend that they have suffered damages due to appellees’ violation of state and federal laws on disclosure and negligent misrepresentation. Appellants, citing Lopez v. First Union Nat’l Bank, 129 F.3d 1186, 1192 (11th Cir.1997), contend that “The Annunzio-Wylie Act does not provide a financial institution blanket immunity for any disclosure of an individual’s financial records.” Appellants argue that in order for the safe harbor provision of the Act to apply, “there must be some good faith basis for believing there is a nexus between the suspicion of illegal activity and the account or accounts from which information is disclosed.” Lopez, 129 F.3d at 1195. Appellants contend that JPSO seized $127,730.00 in currency from safe deposit box-* * ⅛ ⅜ at Gulf Coast Bank, which was in the name of appellants and them son, Salvadore Marino, not Toker’s, as John Doe reported. Therefore, appellants contend that the Act does not provide immunity for false information provided by an employee. Appellants further contend that at a minimum, whether Gulf Coast Bank was in good faith is a genuine issue of material fact that would preclude summary judgment.
Appellees contend that under federal law, a financial institution cannot be forced to provide information concerning its disclosures to law enforcement. Specifically, appellees contend that financial institutions are prohibited from disclosures of or that could lead to (1) the existence or nonexistence of a suspicious activity report (“SAR”); (2) existence.or contents of a SAR; (3) communication pertaining to the filing of a SAR or its contents; (4) communications with government authorities that led to the filing of a SAR or ^preparation for the filing of a SAR; (5) communications that follow the filing of a SAR intending to explain or clarify a SAR; and (6) the existence or content of oral communications to authorities regarding suspected or possible violations of laws or regulations that did or did not lead to the filing of a SAR.[2] Appellees also contend that there is no limitation on the immunity provided under the Act because a plain reading of the safe harbor provision of 31 U.S.C. § 5318(g)(3)(A) does not impose a good faith requirement on disclosures. Appel-lees argue that immunity under the Act is supported by the unqualified immunity granted under the RFPA. Thus, appellees argue they are immune under the Act and the RFPA for any alleged disclosures of any possible violation of law to JPSO during a drug investigation and the subsequent arrest of Salvadore Marino, an individual who was part owner of the safe deposit box that was seized by JPSO and is the subject of appellants’ petition for damages. - -
The Right to Financial Privacy Act protects a customer’s financial records in financial institutions by limiting both federal law enforcements ability to obtain or access the information and limiting the financial institutions freedom to give information out. 12 U.S.C. § 3401-3422; Puerta *157 v. United States, 121 F.3d 1338, 1341 (9th Cir.1997). The RFPA prohibits financial institutions from providing any government with information contained in the financial records of its customers except in accordance with the provisions set forth in the RFPA. 12 U.S.C. § 3403(a), (b). The RFPA provides that a financial institution in violation of the disclosure provisions may be liable to a customer for damages including actual and punitive damages. 12 U.S.C. § 3417(a).
|7The RFPA contains a statutory exception for voluntarily notifying a government authority about suspected illegal activity. 12 U.S.C. § 3403(c) provides:
(c) Notification to Government authorities of existence of relevant information in records. Nothing in this title [12 USCS §§ 3401 et seq.] shall preclude any financial institution from notifying a Government authority that such institution, or officer, employee, or agent has information which may be relevant to a possible violation of any statute or regulation. Such information may include only the name or other identifying information concerning any individual, corporation or account involved in and the nature of any suspected illegal activity. Such information may be disclosed notwithstanding any constitution, law, or regulation of any State or political subdivision thereof to the contrary. Any financial institution, or officer, employee, or agent thereof, making a disclosure of information pursuant to this subsection, shall not be liable to the customer under any law or regulation of the United States or any constitution, law, or regulation of any State or political subdivision thereof, for such disclosure or for any failure to notify the customer of such disclosure. (Emphasis added.)
Thus, financial institutions are provided immunity for voluntarily notifying a government authority' about suspected illegal activity.
Another exception to a financial institution’s prohibition against disclosure of a customer’s financial records is contained in 12 U.S.C. § 3413(d). Under this provision, a financial institution is required to provide financial information, but the financial institution is not 'protected by a built-in safe harbor provision, as in 12 U.S.C. § 3403(c), supra, granting immunity for mandatory disclosures. 12 U.S.C. § 3413(d) provides:
(d) Disclosure pursuant to Federal statute or rule’ promulgated thereunder. Nothing in this title [12 USCS §§ 3401 et seq.] shall authorize the withholding of financial records or information required to be reported in accordance with any Federal statute or rule promulgated thereunder. (Emphasis added.)
Pursuant to the plain language of the RFPA, appellee is provided absolute immunity for any alleged voluntary disclosure or communication with JPSO regarding any possible violation of law by Salvadore Marino (ie., arrested for Isdrug-related crimes and failure to pay taxes), under any law or regulation. 12 U.S.C., § 3403(c)., , Similarly, 12 U.S.C. § 3413(d) requires Gulf Coast Bank to disclose certain information in accordance to any federal statute or rule. The provisions of 31 U.S.C. § 5318(g) and 12 C.F.R. §§ 21.11, 208.62, 353.3, and 31 C.F.R. § 1020.320 require financial institutions to report suspicious activity associated with known or suspected violations of law. Any alleged disclosures or communications with JPSO that were required to be- disclosed pursuant to this provision are subject to the safe harbor provisions of 31 U.S.C. § 5318(g)(3)(A), *158 and the regulations promulgated in accordance with the Act, discussed infra. Thus, appellees are granted absolute immunity under 12 U.S.C. § 3413(d).
In 1992, Congress passed the Annunzio-Wylie Anti-Money Laundering Act. See Pub. L. No. 102-550, 106 Stat. 3672; 31 U.S.C. § 5318. The Act gave the Secretary of the Treasury the power to require financial institutions to report suspicious transactions to the appropriate government authorities and contained provisions regarding mandatory and voluntary disclosure of suspicious activity. 31 U.S.C. § 5318(g). The effect of the Act was to “uncover and punish money laundering, particularly in connection with drug trafficking ...” through both voluntary and mandatory . reporting. Stoutt v. Banco Popular de Puerto Rico, 158 F.Supp.2d 167, 173 (D.P.R.2001) (citing Nevin v. Citibank, 107 F.Supp.2d 333, 341 (S.D.N.Y.2000)). The Act provides financial institutions and their officers, employees, and agents immunity under its safe harbor provision from lawsuits based on the financial institutions report or disclosure of suspicious activity. 31 U.S.C. § 5318(g)(3)(A). The safe harbor provision provides:
Any financial institution that makes a voluntary disclosure of any possible violátion of law or regulation to a government agency or makes a disclosure pursuant to this subsection or any other authority, and any director, officer, employee, or agent of such institution who makes, or requires another to make any such | ^disclosure, shall not be liable to any person under any law or regulation of the United States, any constitution, law, or regulation of any State or political subdivision of any State, or under any contract or other legally enforceable agreement (including any arbitration agreement), for such disclosure or for any failure to provide notice of such disclosure to the .person who is the subject of such disclosure or any other person identified in the disclosure. 31 U.S.C. § 5318(g)(3)(A). (Emphasis added.)
The regulations that the Secretary of the Treasury promulgated under the Act specifically require SARs to be filed whenever a financial' institution detects “any known or suspected Federal criminal violation, or pattern of criminal violations, committed or attempted against the bank or involving a transaction or transactions conducted through the bank ... where the bank believes that it was. either an actual or potential victim of .a criminal violation, or series of criminal violations, or that the bank was used to facilitate a criminal transaction,” and (1) a bank insider was involved; (2) over $5,000 was involved, and the bank can identity a suspect; (3) over $25,000 was involved, but the bank cannot identify a suspect; or (4) over $5,000, as well as potential money laundering or violations of the Bank Secrecy Act, were involved. 12 C.F.R. § 21.11(c); See also 12 C.F.R. § 208.62(c); 12 C.F.R. § 353(a); 31 C.F.R. § 1020.320(a). A financial institution must file a SAR within thirty days after it first detects certain facts that lead it to suspect a possible violation and, in certain situations, must immediately notify its regulator and the appropriate law enforcement agencies by telephone, in addition to filing a SAR. 12 C.F.R. § 21.11(d); See also 12 C.F.R. § 208.62(d); 12 C.F.R. § 353.3(b); 31 C.F.R. § 1020.320(b). A financial institution is protected from liability for voluntary or mandatory disclosures to the full extent prowded by the safe harbor provision of 31 U.S.C. § 5318(g)(3)(A). 12 C.F.R. § 21.11(1); See also 12 C.F.R. § 208.62(k); 12 C.F.R. § 353.3(h); 31 C.F.R. § 1020.320(f).
| ^Whether the safe harbor provision of 31 U.S.C § 5318(g)(3)(A) provides financial *159 institutions with absolute immunity for any and all disclosures made to any law enforcement agency is a res nova issue for this Court. There is a split in the federal district courts and circuit courts as to whether the safe harbor provision of 31 U.S.C. § 5318(g)(3)(A) provides absolute immunity for disclosures or whether it imposes an additional good faith requirement to provide immunity for disclosures. In Louisiana, only the Second Circuit Court of Appeal has attempted to address this issue.
Appellants cite Lopez, supra, in support of their position that 31 U.S.C. § 5318(g)(3)(A) does not provide absolute immunity for any and all financial disclo-suies. In Lopez, the U.S. Eleventh Circuit Court of Appeals held that the safe harbor provision set forth in the Act granted immunity from liability for three different kinds of disclosure: “(i) A disclosure of any possible violation of law or regulation, (ii) A disclosure pursuant- to § 5318(g) itself, or (iii) A disclosure pursuant to any other authority.” Lopez, 129 F.3d at 1191. The court found that “in order to be immune from liability, it is sufficient that a financial institution have a good faith 'suspicion that a law Or regulation may have been violation, even if it turns out in hindsight that none was.” Id. at 1192.
Appellants also contend that the Louisiana Second Circuit Court of Appeal in Doughty v. Cummings, 44,812 (La.App. 2 Cir. 12/30/09), 28 So.3d 580, writ denied, 10-0251 (La.04/09/10), 31 So.3d 394 addressed this issue and imposed a good faith requirement under the Act. However, Doughty is factually distinguishable from this case. Under the facts of Doughty, the court held that the trial court did not err in denying the bank’s exception of no cause of action because the employee of the bank and the bank “wére not reporting a possible violation, but were merely seeking financial benefit.” Moreover, the court discussed whether | nthere was a good faith requirement, but it did not specifically hold that there is a good faith .requirement pursuant to the Act.
Lopez has been extensively criticized in the federal district and circuit courts for importing a good faith requirement into the plain language of the Act. See Coffman v. Cent. Bank & Trust Co., 2012 U.S. Dist. LEXIS 136757, 2012 WL 4433293 (E.D.Ky.2012); Martinez-Rodriguez v. Bank of America, 2012 U.S. Dist. LEXIS 38499, 2012 WL 967030 (N.D.Cal.2012); Eyo v. United States, 06-6185, 2007 U.S. Dist. LEXIS 88088, 2007 WL 4277511 (D.N.J.2007); Nieman v. Firstar Bank, 2005 U.S. Dist. LEXIS 38959, 2005 WL 2346998 (N.D.Ia.2005); Whitney Nat’l Bank v. Karam, 306 F.Supp.2d 678, 680 (S.D.Tex.2004); Gregory v. Bank One Corp., 200 F.Supp.2d 1000, 1003 (S.D.Ind.2002); Stoutt v. Banco Popular de Puerto Rico, 158 F.Supp.2d 167, 175 (D.P.R.2001); Nevin v. Citibank, 107 F.Supp.2d 333, 341 (S.D.N.Y.2000); Stoutt v. Banco Popular De Puerto Rico, 320 F.3d 26, 29 (1st Cir.2003); Lee v. Bankers Trust Co., 166 F.3d 540, 544-545 (2nd Cir.1999).
The U.S. Second Circuit' Court of Appeals considered the same issue .and found that the immunity granted, under the Act was unambiguous and unqualified. Lee v. Bankers Trust Co., 166 F.3d 540, 542-544 (2nd Cir.1999). The Lee court declined to. impose a .good faith requirement into the Act. Id. at 544.; The court found that the “plain meaning of a statute controls its interpretation.” Id. at 544. If a statute’s terms .are unambiguous, a court cannot review its legislative history.- Id. The court held:
The plain- language of the safe harbor provision describes an unqualified privilege, never mentioning good faith or -any suggestive analogue thereof. The Act *160 broadly and unambiguously provides for immunity from any law (except the federal Constitution) for any statement made in an SAR by anyone connected to a financial institution. There is not even a hint that the statements must be made in good faith in order to benefit from immunity. Based.on the |^unambiguous language of the Act, [a financial institution] enjoys immunity from liability for its filing of, or any statement made in, an [sic] SAR. Id.
The Lee court also considered a “common sense” view of the safe harbor’s place within the Act. Id. The court stated that the regulations under the Act require financial institutions to file SARs, but prohibit financial institutions from disclosing either that a SAR has been filed or the information contained in the SAR. Id. See 12 C.P.R. § 21.11(h); 12 C.F.R. § 208.62(j); 12 C.F.R. 353.3(g); 31 C.F.R. § 1020.320(e). The court determined that the Act cannot require financial institutions to establish that their disclosures were made in good faith when the regulations promulgated under the Act unequivocally prohibit financial institutions from disclosing the existence of the filing of the SAR and the contents of the SAR.
Although the Lee court found the language of the Act was unambiguous and therefore required no analysis of the legislative history, the court nevertheless found the legislative history to be indicative of legislative intent. The court noted that a prior version of the safe harbor provision included an “explicit good faith requirement for statements made in an SAR.” Id. (citing 137 Cong. Rec. S16,642 (1991)). The good faith requirement was removed in subsequent versions and was not included in the final version of the Act. Id. (citing 137 Cong. Rec. S17,910, S17,969 (1991); 31 U.S.C. § 5318(g)(3)(A)). Removal of the good faith provision indicated the probable intent of Congress that good faith not be a prerequisite for immunity.
In Stoutt v. Banco Popular De P.R., 320 F.3d 26 (1st Cir.2003), the U.S. First Circuit Court of Appeals agreed with the Lee court and declined to import a good faith requirement into the Act. Id. at 30. The court concluded that the language and legislative history of the Act caution against importing a good faith requirement. Id. at 31.
11sWe find Lee and Stoutt to be instructive persuasive authorities for a finding that the Act does not impose a good faith requirement. The plain language of the Act provides immunity for the disclosure of “any possible violation of law or regulation.” The word “any” is broad and unambiguous. We conclude that the safe harbor provision of the Act is unambiguous, unqualified, and does not limit immunity to disclosures made in good faith.
Accordingly, the Act provides appellees with absolute immunity for any alleged disclosures to JPSO concerning any possible violation of law by Salvadore Marino and the existence or non-existence of a SAR and its contents, linked to the seizure of safe deposit box **«**, located at Gulf Coast Bank, in the name of appellants and their son, Salvadore Marino, which is the basis for appellants claims against ap-pellees. Based on a de novo review, the trial court did not err in granting appel-lees’ motion for summary judgment.
CONCLUSION
For the reasons stated above, we affirm the trial court’s judgment granting appel-lees’ motion for summary judgment. Costs of this appeal are assessed against appellants.
AFFIRMED

. Gulf- Coast Bank filed this motion for summary judgment using the facts as alleged by appellants. In order to not violate federal law, Gulf Coast Bank specifically contended that it was not providing an argument in this motion to either , confirm or deny the existence of communications or disclosures to any law enforcement agency. At the hearing, the parties agreed that-the facts were not disputed for the purpose of this motion.

. Whitney Nat’l Bank v. Karam, 306 F.Supp.2d 678, 682-683 (S.D.Tex.2004).