WINDHORST, J.
On November 9, 2015, the District Attorney for the Parish of St. Charles filed a bill of information charging defendant, Kevin Jago, with possession of heroin, on or about November 2, 2015, in violation of La. R.S. 40:967 C.[1] On December 8, 2015, defendant was arraigned and entered a plea of not guilty. On December 21, 2015, defendant filed a motion to quash the bill of information, wherein'he argued the bill should be quashed pursuant to application of the immunity statute set forth in La. R.S. 14:403.10 B. On January 28, 2016, the trial court granted defendant’s motion to quash the bill of information. This appeal by the State followed.[2] For the reasons stated below, the trial court’s judgment granting the motion to quash is reversed, the bill of information is reinstated, and the mattér is remanded for further proceedings.
*1080 FACTS AND PROCEDURAL HISTORY
In its sole assignment of error, the State argues the trial court erred in quashing the bill of information against defendant because the limited testimony presented at the motion to quash hearing did not establish sufficient evidence to support the application of La. R.S. 14:403.10 B.[3]
At the hearing on the motion to quash, Deputy Charles Warren with the St. Charles Sheriffs Office testified that on November 2, 2015, he responded to an anonymous call[4] regarding two males “using drugs” or “passed out high on drugs” | ginside a red Nissan Altima located on Airline Highway in St. Rose.[5] Upon arrival, Deputy Warren observed the vehicle running, and approached the driver’s side door. He observed a white male in the driver’s seat, later identified as defendant, and a black male in the passenger seat, later identified as co-defendant, Rafael Brooks, and both men were unconscious and “slobbering on themselves.” He knocked on the window, and when neither man responded, he opened the driver’s door, which was unlocked. After opening the door, he spoke with defendant and touched his neck to check for a pulse when defendant “started coming around.” Deputy Warren then looked over and saw a hypodermic needle in Brooks’ right hand as he was “coming to.”
Concerned for his own safety, Deputy Warren drew his weapon and ordered Brooks to drop the needle and put his hands on the dashboard while he removed defendant from the vehicle. Defendant understood and complied with Deputy Warren’s commands to get on the ground and put his hands behind his back. After defendant was placed on the ground, Brooks was removed from the vehicle and placed on the ground. Deputy Warren testified that at no point after the defendant “came to” did he lose consciousness or “slobber” again, nor did Deputy Warren believe that the defendant was experiencing an overdose, or that he was in need of medical assistance. Defendant and Brooks were arrested and placed in his vehicle.
Deputy Warren then conducted a search of the vehicle and recovered the hypodermic needle initially seen in Brooks’ hand, a metal container that had a brown substance in it, additional hypodermic needles on the driver’s seat and in the driver’s side door, a brown belt that was around Brooks’ left arm, and a belt-like ^object on the driver’s seat. The hypodermic needles and the brown substance field-tested positive for heroin.
*1081 Other officers arrived on the scene to assist and Deputy Warren informed his sergeant that defendant was initially unconscious. His sergeant directed him to call emergency medical services (“EMS”) “just to check on them.” Once EMS arrived approximately an hour and a half later, defendant informed EMS that he injected approximately “$40 of heroin 3 to 4 hours ago.” He further informed them that he did not need medical assistance, and he signed a refusal form.
Deputy Warren transported defendant and Brooks to the Nelson Coleman Corrections Center. Defendant did not experience any medical problems that needed assistance on the way. Upon arrival, defendant was able to walk inside without assistance. The correctional facility’s medical records showed that defendant was subsequently treated for withdrawal, not for an overdose.
The trial court found that Deputy Warren’s action of opening the door was due to his concern that defendant was experiencing a medical emergency, and therefore, La. R.S. 14:403.10 B applied.[6] The trial court did not make a specific finding that defendant experienced an overdose, and in fact, questioned whether experts were needed to determine if an overdose occurred. The trial court then had a lengthy discussion about the heroin/drug problem in the parish and “reluctantly” granted the motion to quash.
ANALYSIS AND DISCUSSION
A motion to quash is a procedural vehicle for challenging an indictment or a bill of information. La. C.Cr.P. arts. 531-533. Such a motion must be in writing. State v. Dauzart, 07-15 (La.App. 5 Cir. 5/15/07), 960 So.2d 1079, 1084, writ denied, 07-1269 (La. 12/14/07), 970 So.2d 532; State v. Branch, 00-1668 (La.App. 5 Cir. 03/28/01), 784 So.2d 43; State v. Bentel, 00-0057 (La.App. 5 Cir. 09/26/00, 769 So.2d 1247.
This Court applies an abuse of discretion standard when reviewing a trial court’s determination on a motion to quash. State v. Whitley, 14-737 (La.App. 5 Cir. 03/25/15), 169 So.3d 658, 661; State v. Lommasson, 11-536 (La.App. 5 Cir. 11/29/11), 81 So.3d 796, 799. The granting of a defendant’s motion to quash the bill of information is a discretionary ruling by the trial court, and absent abuse, the ruling should not be disturbed by the appellate court. State v. Mendoza, 12-589 (La.App. 5 Cir. 03/13/13), 113 So.3d 288, 292; State v. Payton, 06-1202 (La.App. 4 Cir. 02/28/07), 954 So.2d 193, 195 (citing State v. Love, 00-3347 (La. 05/23/03), 847 So.2d 1198, 1208).
Defendant filed a motion to quash the bill of information wherein he argued that the evidence was obtained while defendant was experiencing an overdose and was in need of medical assistance. The bill of information which charged defendant with possession of heroin was, therefore, in violation of La. R.S. 14:403.10 B.
La. R.S. 14:403.10 B provides:
A person who experiences a drug-related overdose and is in need of medical assistance shall not be charged, prosecuted, or penalized for possession of a controlled dangerous substance under the Uniform Controlled Dangerous Sub *1082 stances Law if the evidence for possession of a controlled substance was obtained as a result of the overdose .and the need for medical assistance.
The statute does not define “overdose” and there is no jurisprudence interpreting this statute.
The starting point in the interpretation of any statute is the language of the statute itself. State v. Shaw, 06-2467 (La. 11/27/07), 969 So.2d 1233, 1242 (citing State v. Johnson, 03-2993 (La. 10/19/04), 884 So.2d 568, 575; Theriot v. Midland Risk Insurance Company, 95-2895 (La. 05/20/97), 694 So.2d 184, 186). A criminal statute must be given a genuine construc tion consistent with the plain meaning of the language in light of its context and with reference to the purpose of the provision. La. R.S. 14:3. Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. La. R.S. 1:3. A criminal statute should be interpreted so as to be in harmony with and to preserve and effectuate the manifest intent of the legislature and an interpretation should be avoided which would operate to defeat the object and purpose of the statute. Shaw, 969 So.2d at 1242. Thus, where the words of a statute are clear and free from ambiguity, they are not to be disregarded under the pretext of pursuing their spirit. La. R.S. 1:4.
Application of La. R.S. 14:403.10 B
As written, La. R.S. 14:403.10 B establishes a three-prong test for determining whether the immunity it establishes applies. The person in possession of the controlled dangerous substance must be experiencing an “overdose”; the person must, be in need of medical assistance; and the evidence of the controlled dangerous substance must have been obtained as a result of the overdose and the need for medical assistance. This statute does not define “overdose,” and there is no jurisprudence interpreting this statute.
First, the record of the hearing on the motion to quash does not support a finding that the defendant was in need of medical assistance. Deputy Warren testified that after rousting the defendant, at no point did he again lose consciousness or “slobber,” nor did Deputy Warren believe that the defendant was experiencing an overdose, or that he was in need of medical assistance. His sergeant had an EMS unit called “just to check on them.” The defendant informed EMS that he injected approximately “$40 of heroin 3 to 4 hours ago.” The defendant informed them that he did not need medical assistance, and he signed a ^refusal form. The correctional facility’s medical records showed that defendant was not treated for an overdose. No expert testimony was offered to the contrary. We therefore conclude that the record does not support a finding that the defendant was in need of medical assistance, and that this requirement of La. R.S. 14:403.10 B has not been met.
We next consider whether the defendant experienced an “overdose” as intended by the statute. “Overdose” is defined by the Merriam-Webster Dictionary as “too great a dose (as of a therapeutic agent); also: a lethal or toxic amount (as of a drug).” “Toxic,” is uniformly defined by the Merriam-Webster Dictionary and by other dictionaries and internet sources as poisonous, deadly, and capable of causing death or serious injury.
For purposes unrelated to La. R.S. 14:403.10 B, La. R.S. 40:978.1 provides for instances in which a first responder, including a peace officer, may possess and administer certain prescription drugs. “Opioid-related drug overdose” is defined therein by La. R.S. 40:978.1 A(3):
*1083 (3) “Opioid-related drug overdose” means a condition including extreme physical illness, decreased level of consciousness, respiratory depression, coma, or the ceasing of respiratory or circulatory function resulting from the consumption or use of an opioid, or another substance with which an opioid was combined.
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law is applied as written, and no further interpretation may be made in search of legislative intent. La. C.C. art. 9; State v. La. Land & Exploration Co., 12-0884 (La. 01/30/13), 110 So.3d 1038, 1044; Rando v. Anco Insulations Inc., 08-1163 (La. 05/22/09), 16 So.3d 1065; 1075. However, when the language of a law is susceptible to different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law, and the meaning of ambiguous words must be sought by examining the context in which they occur 17and the text of the law as a whole. La. C.C. art. 10; Rando, 16 So.3d at 1075; Marino v. Gulf Coast Bank & Trust Co., 15-307 (La. 12/23/15), 184 So.3d 153, 155-156.
We conclude that for the purposes of La. R.S. 14:403.10 B, an “overdose” must be of a lethal, toxic, or poisonous amount that is capable of causing death or serious injury, rather than one which is merely dangerous, “too great a dose,” or causing a lower level of consciousness. Illegal possession or use of any amount of a Controlled Dangerous Substance is, by its nature and by legal prohibition, dangerous and “too great a dose.” Therefore, to define “overdose” merely as one which is dangerous or is “too great a dose” would lead to the absurd result of allowing any amount of a CDS to satisfy this prong of the test for immunity granted by La. R.S. 14:403.10 B.
Moreover, defendant argues that the purpose of La. R.S. 14:403.10 B and the legislature’s intent by enacting it is to save lives. This necessarily contemplates that for the purpose of La. R.S. 14:403.10 B, “overdose” means the use of a lethal, toxic, or poisonous amount which has created a life-threatening condition, or one which is capable of causing death or serious injury.
Here, defendant obviously showed signs of drug impairment, i.e., slobbering on himself and unconsciousness, but there was no evidence of use of a lethal, toxic, or poisonous life-threatening amount. There were no medical tests performed at the scene, the defendant was not treated for an overdose at the correctional facility, and no expert medical testimony was offered at the hearing to indicate whether defendant ingested an amount of heroin likely to result in an overdose.
IsBased on the testimony and evidence adduced at the hearing, the trial court abused its discretion in granting the motion to quash finding defendant was entitled to immunity under the statute and dismissing the bill of information.[7]
*1084 Accordingly, we reverse the trial court’s judgment granting the motion to quash, reinstate the bill of information, and remand this matter for further proceedings. See State v. Trevino, 07-870 (La.App. 5 Cir. 05/27/08), 985 So.2d 851, 858, writ denied, 08-1900 (La. 04/03/09), 6 So.3d 768.
CONCLUSION
For the reasons stated above, the trial court’s judgment granting the motion to quash is reversed, the bill of information is reinstated, and the matter is remanded for further proceedings.
JUDGMENT REVERSED, BILL OF INFORMATION REINSTATED; CASE REMANDED

. Co-defendant, Rafael Brooks, was also charged in the same bill of information, with possession of heroin in violation of La. R.S. 40:967 C. See State v. Brooks, 16-345 (La.App. 5 Cir. —/—/—), — So.3d —.

. The State originally filed a writ seeking supervisory review of the trial court’s judgment. This Court denied the State’s writ application after finding that the judgment was final and appealable, and thus, it was not under this Court’s supervisory jurisdiction. State v. Jago, 16-109 (La. App. 5 Cir. 04/13/16) (unpublished writ disposition). This Court remanded the matter with instructions for the 29th Judicial District Court to treat the State's notice of intent as a motion for appeal. Id.

. The State argues the application of La. R.S, 14:403.10 B is a defense and a defense dependent on the facts and merits of a case cannot be brought by a motion to quash.- Defendant argues La. R.S. 14:403.10 B is an immunity statute that prohibits prosecution regardless of the merits of the case; therefore, a motion to quash is proper to quash a bill of information. The statute provides that a person experiencing a drug-related overdose and in need of medical assistance "shall not be charged, prosecuted, or penalized ...,” which is indicative of immunity. La. R.S. 14:403.10 B.

. The 9-1-1 caller stated that a red Nissan Altima containing one white male and one black male was parked at 10057 Airline Drive in St. Rose. The caller stated that the two males looked "like they’re passed out high sitting in the car not even moving.” He stated they might be “selling and using” drugs. The caller verified that the two males were breathing "just passed out high.” The 9-1-1 caller’s information corroborated Deputy Warren's testimony.

.In addition to Deputy Warren’s testimony, copies of defendant’s EMS medical records from the date of the offense, defendant’s medical records from Nelson Coleman Correctional Center from the date defendant was booked, the incident report, and the 9-1-1 CD were admitted at the hearing.

. On cross-examination, Dep. Warren was asked, “In your opinion, at the time that you see these two individuals passed out, unconscious, slobbering all over themselves, they won’t respond to tapping on the window; you already know that somebody says they’re passed out high on drugs, were you concerned that it was an overdose situation, and these individuals were in need of medical treatment? Dep. Warren responded, "Not at that time, no ma’am.”

. Florida Stat. Ann, § 893.21(2) is illustrative as to the application of La. R.S. 14:403.10 B, Fla. Stat. Ann. § 893.21(2) provides:
A person who experiences a drug-related overdose and is in need of medical assistance may not be charged, prosecuted, or penalized pursuant to this chapter for possession of a controlled substance if the evidence for possession of a controlled substance was obtained as a result of the overdose and the need for medical assistance.
In State v. Silliman, 5D14-2895 (Fla. Dist. Ct. App. 06/12/15), 168 So.3d 245, 245-46, a Florida appellate court stated that although the Florida legislature was silent as to the definition of "overdose," the language of the statute was clear. The court noted that the word "overdose” is defined by the dictionary as: "too great a dose (as of a therapeutic *1084 agent); also: a lethal or toxic amount (as of a drug).” Id.
In Silliman, supra, the deputy observed that the defendant had bloodshot eyes, slow rambling speech, was swaying, and observed what appeared to be paraphernalia peeking out from the defendant’s pocket. The deputy arrested and transported the defendant to a drug treatment facility, and he was subsequently charged with possession of heroin after the paraphernalia was tested. Id. at 246. The charge was later dismissed by the Florida trial court, finding that the defendant was entitled to immunity under section 893.21(2). Id.
The State appealed, arguing that the defendant did not experience a drug overdose and was not in need of medical assistance, but rather, the deputy took him into custody believing him to be impaired. Id. at 246-47. The court of appeal agreed, finding that the defendant showed signs of impairment, not overdose, and exhibited no "symptoms of extreme physical illness or impending death.” Id. at 247. Further, the court relied upon the fact that the defendant did not request medical assistance, and he was taken to a facility to receive drug treatment, rather than to a hospital for medical assistance. Id. Thus, the appellate court found that the trial court erred in granting the defendant immunity and reversed.