ON WRIT OF CERTIORARI TO THE FIFTH CIRCUIT COURT OF APPEAL, PARISH OF ST. CHARLES PER CURIAM: 11Writ denied. The court of appeal, erred in finding that defendant must have injected a lethal quantity of heroin before he can be shielded from prosecution by operation of La.R.S. 14:403.10(B), Requiring a drug user to have experienced a life-threatening overdose—and requiring a lay person: before seeking help to -determine whether a drug user has experienced a life-threatening overdose—would frustrate the purpose of the statute, which is to encourage persons to seek help for those they reasonably believe 'have overdosed, However, under the circumstances here, in which the unconscious defendant was quickly roused and required no medical attention of any kind, La.R,S. 14:403.10(B) does not shield defendant from prosecution because it is only triggered when' (emphasis added), “A person ... experiences a drug-related overdose and is in need of medical assistance ....” Therefore, notwithstanding the court of appeal’s erroneous statement of law, the court'of appeal reached "the correct result and defendant is not entitled to have the charge against him quashed. Johnson, C.J., would grant and assigns reasons. JOHNSON, Chief Justice, would grant. _JjI write separately to address the stark disparity that exists in characterizing individuals impacted by the opioid epidemic. A swift rise in opioid-related deaths has been portrayed as a public health crisis of epic proportions. In fact, President Donald Trump declared the epidemic a national public health emergency on October 26, 2017. While a new collective understanding has emerged acknowledging drug addiction, particularly opioid abuse, as an illness best addressed by our public health institutions rather than our criminal justice system, this new collective understanding only relates to one, category of drug addiction. When we declared a War on Drugs in the 1980’s and 1990’s, lawmakers eschewed compassion and reason, painting a distorted picture of certain drug abusers as violent criminals deserving of long prison sentences, rather than treatment. Prior to the Fair Sentencing Act (FSA) of 2010, the sentencing disparity between offenses for • crack and powder cocaine was 100:1, See Dorsey v. United States, 567 U.S. 260, 264, 132 S.CL 2321, 183 L.Ed.2d 250 (2012). Interestingly, crack addiction largely affected poor communities' of color, while powder cocaine predominantly impacted more affluent white communities. The current opioid crisis, however, casts a much broader demographic net. Many opioid abusers use legally prescribed medication, yet others are addicted to unlawfully, obtained heroin. Indeed, over forty states across the nation, including |gLouisiana, have made opioid antagonists such as na-loxone available over the counter at drugstores such as CVS and Walgreens. The fact remains, however, that opioids killed more than 33,000 people in 2015, and nearly half of those deaths were caused by a prescription opioid.[1] In my view, it is inconceivable to categorize one class of opioid abusers as ill and in need of treatment, while others are prosecuted to the full extent of the law. In this particular case, a deputy responded to an anonymous tip that two males were passed out inside of a parked car with the engine running. Defendant Kevin Jago was in the driver’s seat and co-defendant Rafael Brooks was in the passenger seat. See State v. Brooks, 16-0345 (La. App. 5 Cir. 12/28/16), 210 So.3d 514. Both men were unconscious and did not respond when the deputy knocked on the window of the vehicle. The deputy opened the driver’s side door and checked the defendant for a pulse, at which point defendant began to regain consciousness. The deputy noticed a hypodermic needle in co-defendant Brooks’ right hand, as well as a belt tied around his left arm. After both men regained consciousness, they were removed from the vehicle, arrested, and a search of the vehicle was conducted. The co-defendants were subsequently charged with possession of heroin. Defendant filed a motion to quash the charge, invoking the protection of La. R.S. 14:403.10(B). The defendant submits that the court of appeal’s decision frustrates the very purpose of La. R.S. 14:403.10(B), which is to encourage individuals to seek help in the event of an opioid overdose. The trial court granted the defendant’s motion to quash based on its finding that the statute was specifically designed for this kind of case. The court of appeal overturned the trial court decision with a narrow, more [.^restrictive interpretation of La. R.S. 14:403.10(B), which will effectively deter persons from seeking medical assistance out of fear of prosecution. To be clear, I embrace the notion that drug treatment should be the primary tool used to solve addictions. I have long advocated for reform in our criminal justice system and have actively participated in the Louisiana Justice Reinvestment Task Force, which successfully passed ten bills designed to reduce penalties for drug offenses and other non-violent offenses, while investing in substance abuse treatment and counseling programs.[2] Equal protection requires that we change our approach in handling addictions. We must not continue this pattern of relegating one group of drug abusers to prison, while providing medical assistance for some opioid abusers. Weimer, J., would grant and docket. Hughes, J., would grant and docket . Opioid Overdose, Centers for Disease Control and Prevention Website, https://www.cdc. gov/drugoverdose/index.html (last visited November 13, 2017). . Louisiana Justice Reinvestment Package Summary, Department of Corrections Website, http://www.doc.la.gov/iustice-reinvestment-task-force (last visited November 13, 2017).