STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2021 KA 0626

STATE OF LOUISIANA

VERSUS

QWANDARIOUS ROWE

*DATE OF JUDGMENT:*   DEC 3 0 2021

ON APPEAL FROM THE TWENTY SECOND JUDICIAL DISTRICT COURT
NUMBER 201144503, DIVISION D, PARISH OF WASHINGTON
STATE OF LOUISIANA

HONORABLE MARTIN E. COADY, JUDGE

* * * * * *

Warren LeDoux Montgomery
District Attorney
Matthew Caplan
Assistant District Attorney
Covington, Louisiana

Counsel for Appellee
State of Louisiana

David Albert Weilbaecher
Assistant District Attorney
Franklinton, Louisiana

Lieu T. Vo Clark
Mandeville, Louisiana

Counsel for Defendant-Appellant
Qwandarious Rowe

* * * * * *

BEFORE: GUIDRY, HOLDRIDGE, AND CHUTZ, JJ.

Disposition: CONVICTION AND SENTENCE AFFIRMED.

Holdridge J., concurs for written reasons assigned.
Chutz, J. Dissents and assigns reasons.

**CHUTZ, J.**

The defendant, Qwandarious Rowe, was charged by bill of information with possession of methamphetamine (less than two grams), a violation of La. R.S. 40:967(C).[1] He pled not guilty. Following a hearing on a motion to quash the bill of information, wherein the motion was denied, the defendant withdrew his not guilty plea and entered a guilty plea pursuant to *Crosby*. See *State v. Crosby*, 338 So.2d 584, 588 (La. 1976). He was sentenced to two years at hard labor. The sentence was suspended and the defendant was placed on three years of probation. The defendant now appeals, designating one assignment of error. We affirm the conviction and sentence.

## FACTS

The following facts were established at the motion to quash hearing. On October 16, 2019, Sergeant Michael Thomas, with the Washington Parish Sheriff's Office, was on duty at the Washington Parish Fair. A person at the fair alerted Sergeant Thomas that someone was in a public bathroom stall, sitting on the floor with his pants around his ankles. Sergeant Thomas went to the bathroom and identified the person on the floor as the defendant, whom Sergeant Thomas knew from prior encounters. Sergeant Thomas spoke to the defendant who could not speak coherently, but only mumbled. Sergeant Thomas helped the defendant to his feet and, as he pulled the defendant's pants up, he felt a syringe in the defendant's pocket, which he seized. The defendant was taken out of the bathroom and placed on the back of a golf cart, driven by Northshore EMS personnel, for observation. Sergeant Thomas felt the defendant needed to be evaluated further, so an ambulance was called. While the defendant was still sitting on the back of the golf cart, Sergeant Thomas saw something sticking out of the defendant's sock.

---

[1] See La. R.S. 40:964(C)(2) (Schedule II).

2

Sergeant Thomas rolled down the defendant's sock and found what he believed to be methamphetamine wrapped in a $5 dollar bill.

The defendant was transported to Riverside Medical Center where he underwent observation, then was released later that same day. Sergeant Thomas testified at the motion to quash hearing that he did not think the defendant had overdosed, but felt he should be brought to the hospital to be checked out.

## ASSIGNMENT OF ERROR

In his sole assignment of error, the defendant argues the trial court erred in denying the motion to quash the bill of information.

When a trial court denies a motion to quash, factual and credibility determinations should not be reversed in the absence of a clear abuse of the trial court's discretion. See *State v. Odom*, 2002-2698 (La. App. 1st Cir. 6/27/03), 861 So.2d 187, 191, writ denied, 2003-2142 (La. 10/17/03), 855 So.2d 765. However, a trial court's legal findings are subject to a *de novo* standard of review. See *State v. Smith*, 99-0606 (La. 7/6/00), 766 So.2d 501, 504.

A motion to quash is, essentially, a mechanism whereby pretrial pleas are urged, i.e., pleas which do not go to the merits of the charge. At a hearing on such a motion, evidence is limited to procedural matters and the question of factual guilt or innocence is not before the court. See La. C.Cr.P. art. 531-538; *State v. Byrd*, 96-2302 (La. 3/13/98), 708 So.2d 401, 411, cert. denied, 525 U.S. 876, 119 S.Ct. 179, 142 L.Ed.2d 146 (1998).

In considering a motion to quash, a court must accept as true the facts contained in the bills of information and in the bill of particulars, and determine as a matter of law and from the face of the pleadings, whether a crime has been charged; while evidence may be adduced, such may not include a defense on the merits. *Byrd*, 708 So.2d at 411, citing *State v. Masino*, 214 La. 744, 748-49, 38

3

So.2d 622, 623 (1949) ("The fact that defendants may have a good defense is not sufficient grounds to quash the indictment.").

The defendant argues herein that his motion to quash the bill of information should have been granted, based on La. R.S. 14:403.10(B), which provides:

> A person who experiences a drug-related overdose and is in need of medical assistance shall not be charged, prosecuted, or penalized for possession of a controlled dangerous substance under the Uniform Controlled Dangerous Substances Law if the evidence for possession of a controlled substance was obtained as a result of the overdose and the need for medical assistance.

To date, only the fifth circuit has addressed the meaning of overdose in La. R.S. 14:403.10(B). In *State v. Brooks*, 2016-345 (La. App. 5th Cir. 12/28/16), 210 So.3d 514, 519, and *State v. Jago*, 2016-346 (La. App. 5th Cir. 12/28/16), 209 So.3d 1078, 1082, writ denied, 2017-0183 (La. 11/17/17), 228 So.3d 1218 (per curiam) both decided the same day, the fifth circuit opined:

> As written, La. R.S. 14:403.10B establishes a three-prong test for determining whether the immunity it establishes applies. The person in possession of the controlled dangerous substance must be experiencing an "overdose"; the person must be in need of medical assistance; and the evidence of the controlled dangerous substance must have been obtained as a result of the overdose *and* the need for medical assistance. This statute does not define "overdose," and there is no jurisprudence interpreting this statute.

In determining whether the defendant experienced an overdose as intended by the statute, the fifth circuit in *Jago* looked to the definition of overdose. The court noted:

> "Overdose" is defined by the *Merriam–Webster Dictionary* as "too great a dose (as of a therapeutic agent); *also*: a lethal or toxic amount (as of a drug)." "Toxic," is uniformly defined by the *Merriam–Webster Dictionary* and by other dictionaries and internet sources as poisonous, deadly, and capable of causing death or serious injury.

*Jago*, 209 So.3d at1082.

The fifth circuit found that for the purposes of La. R.S. 14:403.10(B):

> an "overdose" must be of a lethal, toxic, or poisonous amount that is capable of causing death or serious injury, rather than one which is

4

merely dangerous, "too great a dose," or causing a lower level of consciousness. Illegal possession or use of *any* amount of a Controlled Dangerous Substance [CDS] is, by its nature and by legal prohibition, dangerous and "too great a dose." Therefore, to define "overdose" merely as one which is dangerous or is "too great a dose" would lead to the absurd result of allowing *any* amount of a CDS to satisfy this prong of the test for immunity granted by La. R.S. 14:403.10B.

*Jago*, 209 So.3d at 1083.

Given the defendant's argument that the purpose of La. R.S. 14:403.10(B) was to save lives, the court in *Jago* found that such an argument necessarily contemplated that "overdose" in the statute meant "the use of a lethal, toxic, or poisonous amount which has created a life-threatening condition, or one which is capable of causing death or serious injury." 209 So.3d at 1083. The court noted that while the defendant obviously showed signs of drug impairment, such as slobbering on himself and unconsciousness, there was no evidence of use of a lethal, toxic, or poisonous life-threatening amount; there were no medical tests performed at the scene and no treatment for an overdose at the correctional facility; and "no expert medical testimony was offered at the hearing to indicate whether defendant ingested an amount of heroin likely to result in an overdose." *Id.* Accordingly, the fifth circuit found the trial court abused its discretion in its grant of the motion to quash, concluding that the defendant was entitled to immunity under the statute, and dismissal of the bill of information. See *Jago*, 209 So.3d at 1083.

In denying the defendant's writ application in *Jago*, the supreme court in a per curiam opinion found:

The court of appeal erred in finding that defendant must have injected a lethal quantity of heroin before he can be shielded from prosecution by operation of La. R.S. 14:403.10(B). Requiring a drug user to have experienced a life-threatening overdose—and requiring a lay person before seeking help to determine whether a drug user has experienced a life-threatening overdose—would frustrate the purpose of the statute, which is to encourage persons to seek help for those they

5

reasonably believe have overdosed. However, under the circumstances here, in which the unconscious defendant was quickly roused and required no medical attention of any kind, La. R.S. 14:403.10(B) does not shield defendant from prosecution because it is only triggered when (emphasis added), "A person ... experiences a drug-related overdose *and is in need of medical assistance ....*" Therefore, notwithstanding the court of appeal's erroneous statement of law, the court of appeal reached the correct result and defendant is not entitled to have the charge against him quashed.

*Jago*, 228 So.3d at 1219.

At the motion to quash hearing herein, the defendant argued that all three prongs of the test for determining prosecutorial immunity under La. R.S. 14:403.10(B), as set out by the fifth circuit, had been met, requiring dismissal of his case. The State agreed two prongs had been met, but argued that the defendant failed to prove that he had overdosed.

In denying the motion to quash, the trial court found the following:

All right. So we are here on 403.10, Paragraph B. And a simple reading, there's not a lot of case law that I was able to find either. But a simple reading of it, and in agreement with the Fifth Circuit, that it is a test that requires not one or the other, but both things. There has to be a drug related overdose and a need of medical assistance. And of course, the fact that the evidence comes from that medical assistance and that overdose.

So I'm left with the problem, in my mind, of figuring out whether Mr. Rowe was experiencing an overdose. And that's where the Court found itself in the Fifth Circuit case as well.

Overdose in the dictionary just says an excessive dose, especially of a narcotic. **Riverside Websters II New College Dictionary.**

I think whether or not someone is experiencing an overdose is a medical diagnosis. Not necessarily a decision that can just be brought out of a dictionary.

So, in the medical records, the only time the word overdose is mentioned is on Page 28 of 53, where it says:

(Reading) Risk factors consist of overdose.

Which I interpret to mean they were worried that there could have been an overdose going on. Not necessarily that there was an overdose. But that certainly was a risk factor that they were looking for.

And then, on Page 19 of 53, which is part of the documents that they send home describing what substance abuse disorder is. It says:

(Reading) Have signs of an overdose. Symptoms include chest pain.

6

Which I didn't see anywhere noted in the medical records that there was any chest pain.

(Reading) Confusion.

Which it did say that he had confusion in multiple places.

(Reading) Sleepiness or difficulty staying awake.

Which was noted in multiple places.

(Reading) Slowed breathing.

So the places that I saw where it listed the respiration rate, it was within the normal levels. It was not highlighted to indicate it was either too low or too fast.

(Reading) Nausea or vomiting.

Which I didn't see indicated any way. And all the places where it indicated gastrointestinal symptoms, those were indicated negative.

(Reading) Or seizures.

Which I didn't see indicated anywhere.

So there's two out of the six symptoms. I'm not a doctor. I don't know if that's an overdose. But I do tend to agree with argument from counsel from the State saying that any narcotic drug, the symptoms are going to be some degree of confusion and sleepiness. And just because there's a use does not mean that it's an overuse, or that he was in risk of or potentially having an overdose.

And just for record purposes, also interesting to me as far as rendering judgment on this motion was the final diagnosis was substance abuse, on Page Seven of 53. Substance abuse disorder. Which, if that's the same as diagnosis, no evidence has been introduced to educate me and tell me that.

The only thing that was out of the normal range as far as the vital signs or measurements was a pulse rate that was high. And again, on Page 29 of 53, which is where I see that, the diagnosis was substance abuse.

So in my mind, this comes right down to an evidentiary burden. This motion was filed by [the] defense, who was tasked with proving to me that the defendant was, indeed, experiencing a drug related overdose.

There has been no testimony from any medical personnel or anything indicating to me that he was having an overdose. It seems to me, in a nonmedical way, that he was experiencing a drug related high. I mean, he was being affected by the drugs. But I've seen nothing to indicate to me that he was having an overdose.

So it's a failure to meet the burden of proof to prove to me that Mr. Rowe was experiencing an overdose.

As far as just for the sake of completeness, was he in need of medical assistance? It was probably a good idea and should be best practices, I think, for sheriff's personnel, if they [are] concerned that an overdose may be happening, or just to get them checked out, to have someone called.

So yes, there was a need of medical assistance, I think at least for - - whether it's treatment or not, I don't know. But assistance, I think it was there. So that prong is met. And certainly, the reason for the evidence being obtained was as a result of that need of medical assistance. But just the overdose prong was not met.

7

So that's my ruling. I'm going to deny the motion to quash.

The trial court's ruling is correct. The defendant presented at Riverside Medical Center as conscious, and he could identify himself and place, but was disoriented as to time and situation. He was admitted with altered mental status unspecified. He was diagnosed with psychoactive substance abuse and unspecified psychoactive substance abuse disorder. The defendant was admitted at 7:08 p.m. and discharged less than two-and-one-half hours later at 9:30 p.m.

As the trial court correctly found, the medical records did not indicate that the defendant had overdosed. While it appeared the defendant was intoxicated (from drugs or otherwise), he had not reached that level of intoxication which would be considered an overdose. Of the six symptoms that typify an overdose, the trial court noted that only two appeared to apply to the defendant, namely confusion and sleepiness.

While the supreme court found that a drug user did not have to experience a life-threatening overdose in order for the definition of "overdose" to be satisfied under La. R.S. 14:403.10(B), the court left little guidance as to what constitutes a drug-related overdose. See *Jago*, 228 So.3d 1218. The trial court herein correctly found that an "overdose" is a medical and factual term that requires a witness with a medical background (or a medical expert) to testify as to the medical factors involved in diagnosing whether there has been an overdose. At a trial on the merits, even after such a witness testified, it would be left to the factfinder to, first, accept the testimony of the witness. See *State v. Armentor*, 2019-1267 (La. App. 1st Cir. 7/31/20), 309 So.3d 762, 767, writ denied, 2020-01032 (La. 2/17/21), 310 So.3d 1149. The factfinder would then determine under the facts of the case whether the defendant, in his assertion of an affirmative defense, had met his burden of proving he had experienced a drug-related overdose. See *State v.*

8

*Carter*, 96-0337 (La. App. 1st Cir. 11/8/96), 684 So.2d 432, 437. In the instant matter, it is not even clear what caused the defendant's intoxication. While upon the defendant's admission, the medical records suggest psychoactive substance abuse, it was never determined what the defendant had ingested. In the defendant's less than three hour stay at Riverside Medical Center, it appears no blood was drawn and tested. The defendant could have been intoxicated from alcohol, which would render La. R.S. 14:403.10(B) inapplicable. Sergeant Thomas testified at the motion to quash hearing that the defendant was under the influence, and that at the fair, there was "lots of alcohol and everything else up there." When asked on cross-examination if he thought the defendant's condition was drug related, Sergeant Thomas replied: "That is correct. Or alcohol."

In any event, as noted, the motion to quash is used to raise pre-trial pleas or defenses, i.e., those matters which do not go to the merits of the charge. La. C.Cr.P. arts. 531-34; *State v. Brooks*, 2012-2126 (La. App. 1st Cir. 9/13/13), 2013 WL 11253304, *1 (unpublished), writ denied, 2013-2629 (La. 4/17/14), 138 So.3d 626. Moreover, at a hearing on a motion to quash, evidence is limited to procedural matters and the question of factual guilt or innocence is not before the court. *State v. Sims*, 2019-1602 (La. App. 1st Cir. 9/2/20), 312 So.3d 616, 619.

Based on the foregoing, the trial court did not err or abuse its discretion in denying the defendant's motion to quash the bill of information. Accordingly, the assignment of error is without merit.

**DECREE**

For these reasons, the conviction and sentence of defendant, Qwandarious Rowe, is affirmed.

**CONVICTION AND SENTENCE AFFIRMED.**

9

STATE OF LOUISIANA

VERSUS

QWANDARIOUS ROWE

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2021 KA 0626

**HOLDRIDGE, J., concurring.**

I respectfully concur in this case. The Louisiana Supreme Court stated in the per curiam opinion, State v. Jago, 2017-0183 (La. 11/17/17), 228 So.3d 1218, 1219, that "requiring a lay person before seeking help to determine whether a drug user has experienced a life-threatening overdose—would frustrate the purpose of the statute, which is to encourage persons to seek help for those they reasonably believe have overdosed." However, the language of the Supreme Court in Jago gives the impression that we should encourage law enforcement to only assist and seek medical assistance for individuals who have overdosed. As stated by the trial judge in this case, sometimes it is the "best practice ... to get them checked out[.]" Therefore, I find that La. R.S. 14:403.10(B) should be read to encourage law enforcement in all cases to seek medical assistance for individuals who they are concerned may be in medical distress for any reason. However, in order for the immunity provided by La. R.S. 14:403.10(B) to apply, the defendant would have to prove the elements of the three-prong test and establish that medical assistance was provided because he was experiencing an overdose. In this case, the defendant did not meet his burden that he overdosed. Therefore, he is not immune from prosecution for his drug offense.

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2021 KA 0626

STATE OF LOUISIANA

VERSUS

QWANDARIOUS ROWE

**GUIDRY, J., dissents and assigns reasons.**

**GUIDRY, J., dissenting.**

The complementary role of trial courts and appellate courts demands that deference be given to a trial court's discretionary decision, an appellate court is allowed to reverse a trial court judgment on a motion to quash only if that finding represents an abuse of the trial court's discretion. State v. Love, 00-3347, pp. 9-10 (La. 5/23/03), 847 So. 2d 1198, 1206. However, a trial court's legal findings are subject to a de novo standard of review. See State v. Smith, 99-0606, p. 3 (La. 7/6/00), 766 So.2d 501, 504.

The defendant argues herein that his motion to quash the bill of information should have been granted, based on La. R.S. 14:403.10(B), which provides:

> A person who experiences a drug-related overdose and is in need of medical assistance shall not be charged, prosecuted, or penalized for possession of a controlled dangerous substance under the Uniform Controlled Dangerous Substances Law if the evidence for possession of a controlled substance was obtained as a result of the overdose and the need for medical assistance.

This case represents the exact type of case envisioned by the legislature in passing this immunity statute, one in which someone reasonably believes a person is experiencing a drug-related overdose and the person receives medical assistance as a result of the overdose. In the instant case, a layperson found the defendant on a bathroom floor, with his pants around his ankles, and sought help. A law

1

enforcement officer, who knew and who had interacted with defendant in the past, located him in the bathroom extremely drowsy, coming in and out of sleep, and incoherent. The officer found a syringe and what he believed to be methamphetamine while attempting to assist the defendant and have on site EMS provide medical assistance. The officer reasonably believed that the onsite EMS care was insufficient and caused the defendant to be transported to the hospital by ambulance. The emergency room doctor's notes include an observation of "risk factors consistent of overdose". The trial judge characterized it as what seemed to him to be a drug-related high. The state and trial court concede that the defendant was in need of and did receive medical assistance.

So here, we have both prongs of the statute satisfied. The statute's purpose is to save lives and these critical split-second decisions have to be made based upon what is happening in real time. The majority's opinion would have a chilling effect on a person responding to what reasonably appears to be a drug-related overdose and frustrates the legislative intent to save lives. A witness to a drug-related overdose may hesitate or fail to get medical assistance for the drug user rather than exposing the person to criminal prosecution, which is exactly the scenario that the statute seeks to avoid. That person, who we do not expect to be a medical doctor, should not be caused to hesitate or not seek medical assistance in those critical moments, because they are not positive that an overdose will be the final call after Monday morning quarterbacking, or worry about whether they may be causing the person they reasonably believe to be experiencing a drug-related overdose to be prosecuted and thereby entangling themselves in the judicial system as a possible witness.

Therefore, under the specific facts of this case, I must respectfully dissent from the majority's opinion.