STATE OF LOUISIANA

VERSUS

PATRICIA JEFFERSON

NO. 23-KA-483

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE FORTIETH JUDICIAL DISTRICT COURT
PARISH OF ST. JOHN THE BAPTIST, STATE OF LOUISIANA
NO. 03,80, DIVISION "C"
HONORABLE J. STERLING SNOWDY, JUDGE PRESIDING

July 31, 2024

**STEPHEN J. WINDHORST**
**JUDGE**

Panel composed of Judges Stephen J. Windhorst,
John J. Molaison, Jr., and Amanda L. Calogero, Pro Tempore

**REVERSED; REMANDED**
**SJW**
**ALC**

**DISSENTS WITH REASONS**
**JJM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Morgan Naquin
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
STATE OF LOUISIANA
Honorable Bridget A. Dinvaut
Orenthal J. Jasmin
Grant L. Willis

COUNSEL FOR DEFENDANT/APPELLEE,
PATRICIA JEFFERSON
Laura Anne Reeds

**WINDHORST, J.**

Appellant, the State of Louisiana, appeals the trial court's June 22, 2023 judgment granting appellee/defendant Patricia Jefferson's motion to dismiss. For the reasons stated herein, we reverse the trial court's judgment, deny defendant's motion to dismiss, and remand this matter for further proceedings.

**PROCEDURAL HISTORY**

On March 21, 2003, the District Attorney for the 40th Judicial District filed a bill of information charging defendant, Patricia Jefferson, with four counts of carnal knowledge of a juvenile in violation of La. R.S. 14:80 A(2). On April 10, 2003, defense counsel filed a Motion and Order for Mental Examination, Appointment of Sanity Commission, and Stay of Prosecution, which the trial court granted. On May 21, 2003, a sanity hearing was held, and the trial court found defendant incompetent to stand trial. On December 8, 2003, the trial court found defendant unrestorably incompetent to stand trial and ordered supervised probation under La. C.Cr.P. art. 648 B. On March 17, 2004, a review hearing was held, and defendant was found incompetent under Article 648 B(2). On March 23, 2005, defense counsel filed a Motion to Terminate Probation, which the trial court granted.[1]

On March 1, 2023, defense counsel moved to have defendant's case dismissed due to defendant being unrestorably incompetent, and the State objected. On April 21, 2023, defendant filed a Motion for Rule to Show Cause Why the Charges in this Case should not be Dismissed. On June 22, 2023, after a hearing, the trial court granted defendant's motion. This appeal followed.[2]

---

[1] The release of defendant from the supervision of probation was in compliance with the decision in State v. Denson, 04-0846 (La. 12/1/04), 888 So2d 805, which declared that requiring state supervised probation of a non-dangerous criminal defendant, found incapable of standing trial in the foreseeable future, is a violation of due process.

[2] On November 21, 2023, this court sent the Louisiana Attorney General's Office a letter stating that the constitutionality of La. C.Cr.P. art. 648(B)(3) had been raised in this appeal and giving it until December 23, 2023, to brief the issues. As of the date of this opinion, no response has been received. Upon review of this appeal, however, we find the State is not challenging the constitutionality of the statute; rather the State is challenging the trial court's interpretation of the statute. On October 4, 2023, this court issued a protective order upon a determination that the substance falls within La. R.S. 46:1844.

**FACTS**

The underlying facts were not developed at a trial. Nevertheless, the State alleged in the bill of information that on or between June 1, 2002 and August 1, 2002, defendant violated La. R.S. 14:80 A(2) by engaging in sexual intercourse with R.H. (counts one and two), A.S. (count three), and T.J. (count four).

**LAW and ANALYSIS**

On appeal, the State argues the trial court erred by dismissing the charges against defendant under La. C.Cr.P. art. 648 B(3). The State argues that a plain reading of this statute creates an exception for an enumerated list of offenses, which includes the instant charged offense of carnal knowledge of a juvenile, that may not be dismissed regardless of whether the time frame for the maximum sentence has been reached or if a five-year period has run since the date of the arrest.

The starting point in the interpretation of any statutory provision is the language of the statute itself. State v. Jago, 16-346 (La. App. 5 Cir. 12/28/16), 209 So.3d 1078; 1082; State v. Oliphant, 12-1176 (La. 03/19/13), 113 So.3d 165, 168. A criminal statute must be given a genuine construction consistent with the plain meaning of the language in light of its context and with reference to the purpose of the provision. Jago, 209 So.3d at 1082; La. R.S. 14:3. Words and phrases must be read with their context and shall be construed according to the common and approved usage of the language. La. R.S. 1:3. A criminal statute should be interpreted so as to be in harmony with and to preserve and effectuate the manifest intent of the legislature and an interpretation should be avoided which would operate to defeat the object and purpose of the statute. Jago, 209 So.3d at 1082; State v. Shaw, 06-2467 (La. 11/27/07), 969 So.2d 1233, 1242. Thus, where the words of a statute are clear and free from ambiguity, they are not to be disregarded under the pretext of pursuing their spirit. Jago, 209 So.3d at 1082; La. R.S. 1:4.

At issue in this case is the *res nova* interpretation of La. C.Cr.P. art. 648 B(3), which we find is unambiguous, clear and does not lead to absurd results. It provides in pertinent part:

(3) …If not dismissed without prejudice at an earlier trial, charges against an unrestorable incompetent defendant shall be dismissed on the date upon which his sentence would have expired had he been convicted and received the maximum sentence for the crime charged, **or** on the date five years from the date of his arrest for such charges, **whichever is sooner**, except for the following charges:

(a) Charges of a crime of violence as defined in R.S. 14:2 B.[3]
(b) R.S. 14:46 (false imprisonment).
(c) R.S. 14:46.1 (false imprisonment; offender armed with dangerous weapon).
(d) R.S. 14:52 (simple arson).
(e) R.S. 14:62 (simple burglary).
(f) R.S. 14:62.3 (unauthorized entry of an inhabited dwelling).
(g) **R.S. 14:80[4] (carnal knowledge of a juvenile)**.
(h) R.S. 14:81 (indecent behavior with juveniles).
(i) R.S. 14:81.1 (pornography involving juveniles).
(j) R.S. 14:81.2 (molestation of a juvenile or a person with a physical or mental disability).
(k) R.S. 14:89(A)(2) (crime against nature).
(l) R.S. 14:89.1(A)(2) (aggravated crime against nature).
(m) R.S. 14:92 (contributing to the delinquency of juveniles).
(n) R.S. 14: 92.1 (encouraging or contributing to child delinquency, dependency, or neglect).
(o) R.S. 14:93 (cruelty to juveniles).
(p) R.S. 14:93.2.3 (second degree cruelty to juveniles).
(q) R.S. 14:93.3 (cruelty to persons with infirmities).
(r) R.S. 14:93.4 (exploitation of persons with infirmities).
(s) R.S. 14:93.5 (sexual battery of persons with infirmities).
(t) R.S. 14:102 (cruelty to animals).
(u) R.S. 14:106 (obscenity).
(v) R.S. 14:283 (video voyeurism).
(w) R.S. 14:284 (Peeping Tom).
(x) Charges against a defendant who has been convicted of a felony offense within ten years prior to the date on which he was charged for the current offense.

[Boldface emphasis and internal footnote 3 added; internal footnote 4 same as in original.]

---

[3] La. R.S. 14:2 lists 60 crimes of violence.
[4] The section heading of R.S. 14:80 was changed to "Felony carnal knowledge of a juvenile" by Acts 2001, No. 796, § 1.

La. C.Cr.P. art. 648 B(3) clearly states that criminal charges against an unrestorable incompetent defendant shall be dismissed on either the date the maximum sentence he could have received would have expired, **or** on the expiration of five years from the date of his arrest, ***whichever date is sooner***. Therefore, neither of the alternative provisions of paragraph 648 B(3), which require mandatory dismissal by the trial court, apply to crimes of violence as defined in R.S. 14:2 B or to the other enumerated crimes, including the instant offense of carnal knowledge of a juvenile. These crimes are specifically excluded, regardless of which time frame ends sooner.

Whether one agrees with it or not, La. C.Cr.P. art. 648 B(3) is logical and sensible. It expresses the legislature's clear intent to exclude certain serious crimes from application under *both* alternative mandatory dismissal provisions of article 648 B(3). For these excluded crimes, whether to dismiss or maintain the charge(s) against an unrestorable incompetent defendant remains within the district attorney's discretion.

The appellee contends that the plain language of La. C.Cr.P. art. 648 B(3) is susceptible to only one interpretation, which is that the list of excluded crimes only apply when the latter of the two alternative time frames applies. Thus, she argues that the enumerated crimes are excluded from mandatory dismissal only when the expiration of five years since defendant's arrest time frame applies, but not when the expiration of the maximum sentence time frame applies. Apparently the trial court agreed, and granted the motion to dismiss.

We disagree. As stated above, the list of crimes in article 648 B(3) which are excluded from mandatory dismissal applies equally to ***both*** alternative time frames, depending only upon "whichever is sooner." The use of "whichever" clearly indicates that the list of excluded crimes will apply to either alternative provision.

We find no ambiguity here and no possible disparate interpretations of this law, as suggested by the dissent. The interpretation argued by appellee is faulty and incorrect because La. C.Cr.P. art. 648 B(3) states that ***whichever*** alternative time period ends sooner applies. Thus, we find the enumerated crimes are excluded from mandatory dismissal under ***both*** of the alternative time periods, depending only upon which ends sooner.[5]

## CONCLUSION

The clear language of La. C.Cr.P. art. 648 B(3) creates an exclusion for the enumerated list of offenses which are not subject to mandatory dismissal by the court, regardless of whether the period of time for the maximum sentence has passed, or when a five-year period since the date of the arrest has passed. This interpretation is supported by the phrase "whichever is sooner," which precedes the phrase "except for the following charges." The offense charged in this case, carnal knowledge of a juvenile, is one of the enumerated offenses, and it is therefore excluded from mandatory dismissal by the court.

## DECREE

For the foregoing reasons, we find that the trial court erred by granting defendant's motion to dismiss the charges. Accordingly, we reverse the trial court's judgment granting defendant's motion to dismiss, deny the motion to dismiss, and remand for further proceedings.

<u>**REVERSED; REMANDED**</u>

---

[5] The defendant is not necessarily stuck with this result in perpetuity. The defendant may be re-evaluated to determine whether she is still unrestorably incompetent, especially considering that the evaluation *seems* to indicate that incompetence was based on level of intelligence rather than any other factor. Also, the district attorney, who still has the prerogative to dismiss, might reconsider dismissal, particularly since defendant could have been considered a victim herself, as argued by her counsel.

STATE OF LOUISIANA                    NO. 23-KA-483

VERSUS                                FIFTH CIRCUIT

PATRICIA JEFFERSON                    COURT OF APPEAL

                                      STATE OF LOUISIANA


**MOLAISON J., DISSENTS WITH REASONS**

This appeal presents a *res nova* issue for Louisiana courts: does our law forbid the State from keeping an unrestorably incompetent defendant in perpetual custody while simultaneously sanctioning the creation of an indestructible indictment that will cast a shadow over that person in the public record even after death, regardless of guilt or innocence?  The majority holds that this is the correct interpretation of La. C.Cr.P. art. 648. In my estimation, the majority opinion 1) places an impermissible restriction on a district attorney's absolute power to dismiss a criminal charge and 2) ensures that intellectually disabled persons[6] are permanently deprived of due process, as they will never be allowed to bring their charges to finality. For the reasons that follow, I respectfully dissent.

---

[6] In *State v. Robertson*, 2016-1742 (La. 4/6/18), 239 So. 3d 268, 271, the Supreme Court explained that the term "intellectually disabled" has come to replace the term "mentally retarded persons." Citing *State v. Williams*, 01-1650 (La. 11/1/02), 831 So.2d 835, 853-54, the court noted:

> As implemented in Louisiana, intellectual disability is a three-part condition shown by establishing: (1) sub-average intelligence and (2) significant impairment in several areas of adaptive skills that (3) manifested during the developmental stage.

23-KA-483                    1

*An absence of facts and an insufficient bill of information*

While not germane to the question of statutory interpretation, I must express that I find the lack of a record on appeal concerning.[7] There are two sets of allegations before us. Both are unproven.

As the bill of information indicates, the State's version of events is a woefully insufficient recitation of the essential facts constituting the offenses charged. There is no indication of the defendant's age or the ages of the alleged victims at the time the alleged crimes took place.[8] It is the caliber of a charging document that the trial court could justifiably quash.[9]

In her rendition of the facts, the defense counsel asserts:

> In the summer of 2002, [defendant], a person with a lifelong intellectual disability, was repeatedly sexually assaulted by three juveniles. The father of one of the juveniles was a member of local law enforcement. [The defendant] was 30 years old at the time, and living with her mother. On more than one occasion, [the defendant's] mother called the sheriff's office to report that teenagers in the neighborhood would not leave her daughter alone. None of the juveniles were arrested for rape or sexual battery, despite the applicability of such charges. Instead, on March 5, 2003, the sheriff's office arrested [the defendant] for multiple counts of carnal knowledge of a juvenile.

---

[7] The appellant bears the burden of furnishing the appellate court with a record of the proceedings below. *State v. Shaw*, 00–1051 (La. App. 5 Cir. 2/14/01), 785 So.2d 34, 42, *writ denied*, 01-0969 (La.2/8/02), 807 So.2d 861. Any inadequacy of the record is imputable to the appellant. *Id.* As held in *State v. Bizette*, 334 So.2d 392 (La.1976), it is not the defendant's obligation to insure an adequate record. In this case, I believe a valid argument could be made that the missing material portions of the trial record are prejudicial. *State v. Campbell*, 06-0286 (La. 5/21/08), 983 So.2d 810, 872.

[8] Although not assigned as error, defects in the bill of information are reviewable as an error patent on the face of the record. La C.Cr.P. Art. 920; *State v. Wells*, 283 So.2d 245, 245 (La. 1973).

[9] If the indictment, bill of information, and/or bill of particulars fails to inform the defendant adequately of the charges against him, the trial court may order the indictment or bill of information quashed. *See State v. DeJesus*, 94–261 (La.9/16/94), 642 So.2d 854, 855.

Outside the bill of information, the record before us is inadequate to demonstrate the underlying facts in this case. No police report accounts for the defendant's development as a suspect and the charges. We know that within months of being accused, the Court found P.J. unrestorably incompetent to stand trial. The State does not dispute the defendant's designation of unrestorable incompetence. Aside from a minute entry, the record contains no evidence of a sanity commission's assessment of the defendant, including the nature of the lifelong intellectual disability that makes her unrestorably incompetent.[10] The record does not indicate an arrest for similar offenses before or after the instant charges. The defendant's pre-trial probation was terminated in 2005 following the Louisiana Supreme Court's ruling in *State v. Denson*, 888 So.2d 805 (La. 2004). There is no documentation showing that the trial court maintained active ongoing supervision of P.J. There is no evidence in the record to suggest that the State considered P.J. to be a threat to public safety, which would necessitate holding her at a forensic facility under a civil commitment.

Perhaps the unprosecutable charges at issue would never have become relevant again had it not become necessary for the defendant to have her record expunged, with the assistance of *pro bono* counsel, to remain employed with a company as a house cleaner in an adjoining state.

---

[10] Evidence that all required steps of La. C.Cr.P. art. 648 have been complied is crucial because, as noted by the Fourth Circuit in *State v. Billips*, 22-0762 (La. App. 4 Cir. 12/6/22), 353 So.3d 347, 351:

> The dismissal provision of (B)(3) is not a broad rule of dismissal, but the concluding passage of the procedures which the trial court must take after conducting a contradictory competency hearing and determining that the irrestorably incompetent defendant will not be able to stand trial in the foreseeable future.

Even without an adequate record, however, we know that the defendant is presumed innocent until proven guilty. Here, a jury did not find that the defendant committed an offense but was not guilty because of insanity. No consequences stem from the charges against the defendant. For example, the defendant is not a registered offender, having never been convicted.[11] La. Atty. Gen. Op. No. 03-0435 (La.A.G.), 2004 WL 5785018 La. Att'y Gen. Op. No. 03-0435 (Jan. 30, 2004)

Against this backdrop, I now turn to the legal issues presented.

### *The State and the Court's power to dismiss charges*

Louisiana law provides for the dismissal of criminal charges under various circumstances. First and foremost, La. C.Cr.P. art. 691 is clear that "[T]he district attorney has the power, in his discretion, to dismiss an indictment or a count in an indictment, and in order to exercise that power it is not necessary that he obtain consent of the court." The article does not distinguish between misdemeanor and felony counts.

Regarding a defendant's right to a speedy trial, La. C.Cr.P. art. 581 states that "[u]pon the expiration of the limitations established by this Chapter, the court shall, upon motion of the defendant, dismiss the indictment." Notably, this article does not limit its applicability to a particular set of felonies or misdemeanors. Similarly, the expungement of arrests and criminal charges that meet certain criteria is not limited to

---

[11] Unrestorable incompetent defendants do not have to register as sex offenders as they do not meet the legal criteria. This is because their cases lack of an adverse result in Court, "(i.e., conviction, finding of not guilty by reason of insanity (at trial), a deferred adjudication, adjudication withheld and/or some comparable resolution resulting in the defendant having been adjudged legally responsible for the offense charged)." La. Att'y Gen. Op. No. 03-0435 (Jan. 30, 2004).

specific felony or misdemeanor offenses.  La. C.Cr.P. art. 976 provides, in pertinent part:

> A person may file a motion to expunge a record of his arrest **for a felony or misdemeanor offense that did not result in a conviction** if any of the following apply:

> (1) The person was not prosecuted for the offense for which he was arrested, and **the limitations on the institution of prosecution have barred the prosecution** for that offense.

[Emphasis added.][12]

The State's argument that the Louisana legislature requires certain offenses never to be dismissed against unrestorable incompetent defendants if accepted as accurate, would belie the St. John District Attorney's Office's discretion to dismiss **any** charge at its sole discretion.  The State's interpretation also conflicts with the right for a competent defendant, accused but untried, to have an arrest for **any** unprosecuted offense removed from their record.

### *Custody and eternal jeopardy*

Both federal and state law recognize that a mentally incapacitated/incompetent defendant in a criminal case cannot be held indefinitely on pending charges. In *Jackson v. Indiana*, 406 U.S. 715, 738, 92 S.Ct. 1845, 1858, 32 L.Ed. 2d 435 (1972), the U.S. Supreme Court held:

> [A] person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either

---

[12] It would appear that the defendant could still apply to have her arrest expunged under La. C.Cr.P. art. 976(1) even without formal dismissal of the charges. Her status as an unrestorable incompetent defendant is a permanent bar to the prosecution of the case.

institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant.

La. C.Cr.P. art. 648 adopts this premise in subsection (B)(1): "[i]n no instance shall such custody, care, and treatment exceed the time of the maximum sentence the defendant could receive if convicted of the crime with which he is charged."

Courts have tacitly acknowledged that while "custody" of a defendant is one issue, perpetual pending criminal charges against a defendant are separate. In the case of *Green v. United States,* 355 U.S. 184, 187-88, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957), Justice Hugo Black opined, in the context of discussing double jeopardy:

> The underlying idea, one that is deeply ingrained in at least the AngloAmerican system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

Our supreme court, in *State v. Rome*, 93-1221 (La.1/14/94), 630 So.2d 1284, 1286, observed:

> The purpose of the statute's mandating dismissal, when legislative time limits have elapsed, is to enforce the accused's right to a speedy trial and to prevent the oppression caused by suspending criminal prosecutions over citizens for indefinite periods of time."

About the specific issue of never dismissing charges against an irrestorably incompetent defendant, in the case of *State v. Davis*, 898 N.E.2d 281, 287-88 (Ind. 2008), the Indiana Supreme Court observed that there was no uniformity on the national level:

There is no relevant precedent in this state on the question of whether there is an inherent denial of due process in holding pending criminal charges indefinitely over the head of one who will never have a chance to prove her innocence. And the jurisdictions that have considered the dismissal of criminal charges against incompetent defendants have done so on the basis of statutory authority or court rule.[13]

All states have addressed the issue of whether an irrestorably incompetent defendant may have the unprosecutable charges against them dismissed. My survey reveals that those laws show varying approaches, with some states expressly forbidding the dismissal of **some** charges[14] and others allowing for the dismissal of **any** charge once meeting pre-determined criteria.[15] I did not find a statute in another jurisdiction that barred dismissal across the board based on a list of felonies.

---

[13] The Court went on to provide the following examples:

> For example, in some states a trial court must dismiss the charges if it determines that the defendant will probably remain incompetent to proceed. See, e.g., Mo. Ann. Stat. § 552.020.11(6) (West 2002); Mont.Code Ann. § 46–14–221(3)(b) (2007). In other states, dismissal of criminal charges is discretionary. See, e.g., Ark.Code Ann. § 5–2–310(C) (Supp.2007); Haw.Rev.Stat. § 704–406(3) (Supp.2007). In still others, the trial court must dismiss the charges against an incompetent defendant in some circumstances, whereas dismissal is discretionary in others. See Minn. R.Crim. P. 20.01(6) (providing that criminal proceedings must be dismissed if the prosecuting attorney has not filed a notice of intention to prosecute the defendant when he has been restored to competency unless the defendant is charged with murder); N.J.Rev.Stat. § 2C:4–6c (2005) (providing that if the defendant has not regained her fitness to proceed within three months, the court shall hold a hearing to determine whether pending charges shall be dismissed with prejudice or held in abeyance).

*Id.*

[14] In Virginia, for example, a charge of aggravated murder against an unrestorably incompetent defendant can never be dismissed. *See*, Code of Virginia, Title 19.2, Chapter 11, § 19.2-169.3. By way of contrast, in Maryland, even a charge of murder against a defendant found incompetent to stand trial can be dismissed "after the lesser of the expiration of 3 years or the maximum sentence for the most serious offense charged." *Hoggle v. State*, 252 Md. App. 124, 127, 258 A.3d 918, 920 (2021).

[15] As observed by author J. Amy Dillard in the article *Without Limitation: "Groundhog Day" for Incompetent Defendants*, 56 DePaul L. Rev. 1221, 1237 (2007):

> In seven states, within a definite time period, the court determines whether a defendant is unrestorably incompetent, then either initiates civil commitment proceedings or releases the defendant and dismisses the charges. See, e.g., Alaska Stat. § 12.47.110 (2006); 725 Ill. Comp. Stat. Ann. 5/104-23 (West 2006); Iowa Code Ann. § 812.9 (West Supp. 2006); Me. Rev. Stat. Ann. tit. 15, § 101-B (2003 & Supp. 2006); N.H. Rev. Stat.

Thus, the question is not whether it is permissible to prohibit some offenses from being dismissed but whether La. C.Cr.P. art. 648(B)(3), in its current form, was designed to accomplish that purpose. In considering the scope of similar statutes, courts in other states have observed that even for a murder charge, "substantive due process requires dismissal of the charges where a defendant will never regain competency and maintaining the charges does not serve the compelling State interest of protecting the public." *Sharris v. Commonwealth*, 480 Mass. 586, 593, 106 N.E.3d 661, 668 (2018). It has also been observed that laws of this type are "intended to ensure that criminal defendants who are unrestorably incompetent to stand trial are not left facing the indefinite pendency of criminal charges. *Id.*

## *The ambiguity in La. C.Cr.P. art. 648*

In Louisiana, our legislature has addressed the issue of the dismissal of charges against an unrestorable incompetent defendant in La. C.Cr.P. art. 648(B)(3), which provides in relevant part:

> If not dismissed without prejudice at an earlier trial, charges against an unrestorable incompetent defendant shall be dismissed on the date upon which his sentence would have expired had he been convicted and received the maximum sentence for the crime charged, or on the date five years from the date of his arrest for such charges, whichever is sooner, except for the following charges:

> (g) R.S. 14:80 (carnal knowledge of a juvenile).

As noted above, the interpretation of La. C.Cr.P. art. 648(B)(3), specific to dismissing the charges enumerated in that statute, is *res nova* in Louisiana. The State contends that La. C.Cr.P. art. 648(B)(3) prohibits a

---

Ann. § 135:17-a (LexisNexis 2006 & Supp. 2006); Or. Rev. Stat. § 161.370 (2005); Wash. Rev. Code Ann. §§ 10.77.025, .090, .092 (West 2002 & Supp. 2007).

charge of La. R.S. 14:80 against an unrestorable incompetent defendant from ever being dismissed. The defendant asserts that the list of enumerated offenses in subsection (B)(3) simply excludes the more lenient provision of the statute allowing the dismissal of charges five years from the date of arrest. Instead, the defendant argues that the dismissal of her charges is governed by the general framework of La. C.Cr.P. art. 648, which is "the date upon which [her] sentence would have expired had [s]he been convicted and received the maximum sentence."

As written, I note that the statute has the practical effect of barring the dismissal of charges against an unrestorable incompetent defendant charged with an offense that carries a life sentence. The statute does not unambiguously forbid the dismissal of specific charges, i.e., "The following charges shall not be subject to dismissal…" However, I find that art. 648(B)(3) is subject to interpretations suggested by the State and the defendant. The phrase "except for the following charges," could mean crimes listed under La. R.S 14:80 are excluded from dismissal altogether. A more concise wording of this intent could read:

> If not dismissed without prejudice at an earlier trial, charges against an unrestorable incompetent defendant shall be dismissed on the date upon which his sentence would have expired had he been convicted and received the maximum sentence for the crime charged, or on the date five years from the date of his arrest for such charges, whichever is sooner. Charges for the following crimes are excepted from dismissal.

A re-worded version of art. 648(B)(3) that captures the defendant's interpretation might read:

> For the following crimes, charges against an unrestorable incompetent defendant, if not dismissed without prejudice at an earlier trial, shall be dismissed on the date upon which his sentence would have expired had he been convicted and

received the maximum sentence for the crime charged. All other offenses shall be dismissed either or on the date five years from the date of his arrest for such charges, or on the date upon which his sentence would have expired had he been convicted and received the maximum sentence for the crime charged, whichever is sooner.

Suppose a statute is susceptible to two interpretations, one of which would render it unconstitutional or raise grave constitutional concerns. In that case, courts must adopt the interpretation of the statute, which will maintain its constitutionality without doing violence to its language. *Oubre v. Louisiana Citizens Fair Plan*, 11-0097 (La. 12/16/11), 79 So.3d 987, 995, *citing Hondroulis v. Schuhmacher*, 553 So.2d 398, 416-17 (La.1988). The principle of lenity "directs that a court construe a criminal statute in favor of the most narrow application when there are serious doubts concerning a meaning of a term." *State v. Ritchie*, 590 So.2d 1139, 1149 (La. 1991). As currently written, I find that article 648 leaves open an important question: does the term "exception" refer to the dismissal altogether, or does it apply solely to the provision that makes one eligible for the faster dismissal between the five-year anniversary of the arrest date, or the date the sentence would have expired?

La. C.Cr.P. art. 648 provides state monitoring and judicial oversight for an unrestorable incompetent defendant. Trial courts must follow a clear series of steps before any dismissal.[16] As the final step in a lengthy process,

---

[16] First, a trial court must determine by a preponderance of the evidence that a defendant does not have the mental capacity to proceed. Next, if a defendant is placed at the Feliciana Forensic Facility and held in a Parish jail for over 180 days, the court will conduct an initial status conference with the State and defense counsel to determine whether the defendant lacks the mental capacity to proceed. If found not competent at that time, after another 180 days, the court shall order a contradictory hearing to determine whether to release the defendant or to order the appropriate authorities to institute civil commitment proceedings pursuant to R.S. 28:54. In no instance shall such custody, care, and treatment exceed the time of the maximum sentence the defendant could receive if convicted of the crime with which he is charged. Upon recommendation of the director or administrator of the treatment facility that a defendant will never be restored to competency, the court is required to conduct a contradictory hearing to

La. C.Cr.P. art. 648(B)(3) provides that, if not dismissed without prejudice at an earlier trial, charges against an unrestorable incompetent defendant shall be dismissed. Under the interpretation of La. C.Cr.P. art. 648 that the defendant suggests, a District Attorney maintains the absolute authority to dismiss any charge without exception. The District Attorney also retains the right to re-file the charge when dismissed without prejudice. An intellectually disabled person, who can never be tried for an offense and who cannot be kept in custody indefinitely, will not be constrained by a Kafka-esque legal limbo where they can never be prosecuted, yet will never have the opportunity through due process to exonerate themselves.

I also find that the defendant's interpretation is consistent with the findings outlined in La. C.Cr.P. art. 971, the general expungement article, which includes the legislature's desire to balance the needs of law enforcement agencies and the desire to afford employment opportunities to all Louisiana citizens, which would necessarily include those such as the defendant herein, who has suffered a lifelong intellectual disability.

*Conclusion*

In this case, the State's bill of information is insufficient to allege that the defendant committed a crime. The record does not demonstrate that the defendant is a threat to public safety decades after being accused. The only

---

determine whether the defendant is, and will in the foreseeable future be, incapable of standing trial and whether he is a danger to himself or others. If, after the hearing, the court determines that the incompetent defendant is unlikely in the foreseeable future to be capable of standing trial, the court shall order the defendant released or remanded to the custody of the Louisiana Department of Health, which may institute civil commitment proceedings pursuant to Title 28 of the Louisiana Revised Statutes of 1950, or release the defendant. The defendant remains in custody pending any civil commitment proceedings. If the defendant is committed to a treatment facility pursuant to Title 28 of the Louisiana Revised Statutes of 1950, the director of the institution designated for the patient's treatment shall, in writing, notify the court and the district attorney when the patient is to be discharged or conditionally discharged, as long as the charges are pending.

undisputed fact is that the defendant can never be tried. It is also undisputed that the defendant in this matter is presumed innocent. La. C.Cr.P. art. 648 provides the means through which a form of due process can be afforded an unrestorable incompetent defendant to bring an endpoint to legal jeopardy after the significant passage of time. However, there is doubt in the statute about the meaning of "except." I reject the majority's interpretation that an unproven offense transforms into another form of indefinite State custody for one incapable of understanding the charges against him. For what is the practical value to the State of holding open charges that, by law, can never be resolved?[17] Therefore, I would affirm the trial court's ruling to dismiss the charges against the defendant without prejudice.

---

[17] "It is more important that innocence be protected than it is that guilt be punished, for guilt and crimes are so frequent in this world that they cannot all be punished. But if innocence itself is brought to the bar and condemned, perhaps to die, then the citizen will say, 'whether I do good or whether I do evil is immaterial, for innocence itself is no protection,' and if such an idea as that were to take hold in the mind of the citizen that would be the end of security whatsoever." – John Adams.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **JULY 31, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 23-KA-483

**E-NOTIFIED**

40TH DISTRICT COURT (CLERK)
HONORABLE J. STERLING SNOWDY (DISTRICT JUDGE)
GRANT L. WILLIS (APPELLANT)
LAURA ANNE REEDS (APPELLEE)

HONORABLE BRIDGET A. DINVAUT
(APPELLANT)

ORENTHAL J. JASMIN (APPELLANT)

**MAILED**