STATE OF LOUISIANA

VERSUS

MATTHEW F. SIEKMANN

NO. 24-KA-178

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 23-5244, DIVISION "E"
HONORABLE FRANK A. BRINDISI, JUDGE PRESIDING

February 05, 2025

**SUSAN M. CHEHARDY**
**CHIEF JUDGE**

Panel composed of Judges Susan M. Chehardy,
John J. Molaison, Jr., and Scott U. Schlegel

**AFFIRMED**
    **SMC**
    **JJM**
    **SUS**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Morgan Waquin
Deputy, Clerk of Court

COUNSEL FOR DEFENDANT/APPELLANT,
MATTHEW F. SIEKMANN
Katherine M. Franks
Chad M. Ikerd

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
Honorable Paul D. Connick, Jr.
Thomas J. Butler
Andrea F. Long
Molly Love
Brooke A. Harris

**CHEHARDY, C.J.**

Defendant-appellant, Matthew F. Siekmann, seeks review of his conviction and sentence for possession of a controlled dangerous substance. Defendant's appointed appellate counsel filed an *Anders* brief and a motion to withdraw representation, attesting that she found no non-frivolous assignments of error for appeal. For the reasons that follow, we affirm defendant's conviction and sentence and, in a separate Order, grant counsel's motion to withdraw representation.

*Facts and Procedural History*

On May 31, 2023, Officer Allena Nacio, a patrol officer with the Harahan Police Department, investigated a theft at a Shell gas station on Jefferson Highway. Officer Nacio learned from the cashier that the subject was a white male wearing black clothes. The cashier told Officer Nacio that the subject loudly said to her: "You're not locking me in here, b***h." He ran to the back door and pushed the cashier with the door. Officer Nacio identified defendant as the person in the surveillance footage she had reviewed. Officer Nacio described defendant as acting agitated and upset while he was in the store.

Officer Richard Bloomer with the Harahan Police Department was tasked with finding the subject. Officer Bloomer said he was informed that the subject was a white male, approximately six feet tall, wearing a black shirt and shorts and holding a Coca-Cola. Officer Bloomer located the suspect at the corner of Hickory and Jefferson Highway, approximately an eighth of a mile from the gas station. He explained that the suspect, whom he later identified as defendant, matched the description and was holding a Coca-Cola, which was the item stolen from the gas station. He recalled that the half-empty bottle had condensation on it, indicating that it recently had come out of a cooler.

Officer Bloomer advised defendant that he was an officer with the Harahan Police Department. He described defendant as sweating profusely, which he explained indicated an extreme use of narcotics. He instructed defendant to put his hands on his police vehicle, and defendant complied. As the officer went to handcuff defendant, he stepped back, hit the officer in the forehead with his elbow, and moved away. Officer Bloomer stated that defendant was screaming. After defendant ignored Officer Bloomer's several verbal commands to lie down, Officer Bloomer deployed his taser; he also requested another unit at the scene. Detective Dave Darwin and Lieutenant Eric Covetto arrived and assisted in handcuffing defendant. Officer Bloomer recalled that defendant continued screaming.

Officer Bloomer testified that once defendant was handcuffed, he blurted out that he had "meth in his pocket along with several old friends." He later clarified that defendant said "he had drugs in his pocket and the needle." Officer Bloomer then searched defendant for safety to locate any open needles. Officer Bloomer identified at trial a small bag of crystal-like substance, which he stated he recovered from defendant's left pocket, along with two needles. The bag was admitted into evidence. Officer Bloomer testified that a presumptive test at the scene showed that the substance was positive for methamphetamines. The parties stipulated that if called to testify, Sandy Lee would be qualified as an expert in the analysis of controlled dangerous substances, and that she would testify that the substance found in the bag was .71 grams of methamphetamine.

Officer Bloomer explained that an ambulance took defendant to the hospital to have the taser probes removed, and to be evaluated as to his mental state and potential drug use. At that time, Officer Bloomer did not place defendant under arrest. Officer Nacio acknowledged that defendant went to the hospital after he was apprehended, and defendant's medical records were admitted into evidence. A drug screening in the medical records showed amphetamines in defendant's

system. Officer Bloomer testified that the officers did not go to the hospital with defendant. Officer Nacio obtained an arrest warrant for defendant for "possession of a Schedule II, theft and battery."

On November 8, 2023, the State charged defendant by bill of information with possession of a controlled dangerous substance (methamphetamine) weighing less than two grams, in violation of La. R.S. 40:967(C). Defendant pled not guilty at his November 30, 2023 arraignment.

On January 8, 2024, defendant filed the following omnibus motions: Motion to Suppress the Statement(s); Defendant's Request for Discovery and Bill of Particulars; Motion for Preliminary Examination; Motion for Reasonable Notice of Trial Date; Motion to Suppress the Evidence; Motion to Suppress the Identification; and Motion for Discovery of Defendant's Statement.

On January 11, 2024, the State filed State's Motion for Discovery, Demand for Notice of Alibi and/or Mental Condition Defenses, and State's Notice of Intent to Introduce Evidence of Other Offenses. On February 6, 2024, the State filed a Notice of Intent to Call Expert Witness and a Notice of Intent to Use Res Gestae Evidence/Request for Simultaneous Trials. On the same date, defendant filed a Motion to Quash.

On February 7, 2024, the trial court denied defendant's motions to suppress statement and evidence, and the motion to quash. The trial court also granted the State's notice of intent to call an expert witness and to use *res gestae* evidence, and granted the State's request for simultaneous trials.[1] That same day, trial began, and the six-person jury found defendant guilty as charged.

---

[1] The trial judge simultaneously considered the three misdemeanor charges in case number 23-5245 against defendant—simple battery, theft valued at less than one thousand dollars, and battery of a police officer—with the jury trial on defendant's separate felony possession charge. The judge found defendant guilty of each misdemeanor. The convictions and sentences for the misdemeanors are not before this Court on appeal.

On February 20, 2024, the trial court sentenced defendant to two years imprisonment at hard labor.[2] Through appointed counsel, defendant now appeals.

*Discussion*

Under the procedure adopted by this Court in *State v. Bradford*, 95-929 (La. App. 5 Cir. 6/25/96), 676 So.2d 1108, 1110-11,[3] appointed appellate counsel has filed a brief asserting that she has thoroughly reviewed the trial court record and cannot find any non-frivolous issues to raise on appeal. Accordingly, pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and *State v. Jyles*, 96-2669 (La. 12/12/97), 704 So.2d 241, appointed counsel requests permission to withdraw as counsel of record.

In *Anders*, the United States Supreme Court stated that appointed appellate counsel may request permission to withdraw if she finds the case to be wholly frivolous after a conscientious examination of it. *See also Smith v. Robbins*, 528 U.S. 259, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). The request to withdraw must be accompanied by "a brief referring to anything in the record that might arguably support the appeal" so as to provide the reviewing court "with a basis for determining whether appointed counsel have fully performed their duty to support their clients' appeals to the best of their ability" and to assist the reviewing court "in making the critical determination whether the appeal is indeed so frivolous that counsel should be permitted to withdraw." *McCoy v. Court of Appeals of Wisconsin, Dist. 1*, 486 U.S. 429, 439, 108 S.Ct. 1895, 1902, 100 L.Ed.2d 440 (1988).

In *Jyles*, 704 So.2d at 241, the Louisiana Supreme Court stated that an *Anders* brief need not tediously catalog every meritless pretrial motion or objection

---

[2] The trial judge ordered the two-year sentence in this case to run concurrently with the six-month sentences imposed for the misdemeanor convictions in case number 23-5245.

[3] In *Bradford*, this Court adopted the procedures outlined in *State v. Benjamin*, 573 So.2d 528, 530 (La. App. 4th Cir. 1990), which were sanctioned by the Louisiana Supreme Court in *State v. Mouton*, 95-981 (La. 4/28/95), 653 So.2d 1176, 1177.

made at trial with a detailed explanation of why the motions or objections lack merit. The Court explained that an *Anders* brief must demonstrate by full discussion and analysis that appellate counsel "has cast an advocate's eye over the trial record and considered whether any ruling made by the trial court, subject to the contemporaneous objection rule, had a significant, adverse impact on shaping the evidence presented to the jury for its consideration." *Id.*

When conducting a review for compliance with *Anders*, an appellate court must conduct an independent review of the record to determine whether the appeal is wholly frivolous. *Bradford*, 676 So.2d at 1110. If, after an independent review, the reviewing court determines there are no non-frivolous issues for appeal, it may grant counsel's motion to withdraw and affirm the defendant's conviction and sentence. However, if the court finds any legal point arguable on the merits, it may either deny the motion and order the court-appointed attorney to file a brief arguing the legal point(s) identified by the court, or grant the motion and appoint substitute appellate counsel. *Id.*

Here, defendant's appellate counsel asserts that after a detailed review of the record, she could find no non-frivolous issues to raise on appeal. Counsel states that the minute entries reflect that defendant appeared at all crucial stages of the proceedings and that the jury was properly composed of six jurors. She explains that the rulings on the pretrial motions present no reversible error. She concludes by asking this Court to conduct an independent review.

Appellant counsel further filed a motion to withdraw as attorney of record, stating that she notified defendant of his right to file a *pro se* brief and of her motion to withdraw. Additionally, this Court sent via certified mail a letter to defendant informing him that an *Anders* brief was filed and that he had until June 22, 2024, to file a *pro se* supplemental brief. Defendant did not file a *pro se* brief.

In response to the *Anders* brief, the State contends appellate counsel has followed the procedures set forth in *Anders* and should be granted the request to withdraw. The State further responds that it properly instituted the charges against defendant by bill of information, that defendant appeared at all crucial stages of the proceedings, and that the pretrial motions do not reflect an abuse of the trial court's discretion. The State indicates there were no objections during *voir dire*; a properly composed jury was seated; the normal order of trial was followed; no trial objections give rise to a viable basis for appeal; and all elements of the offense were proven beyond a reasonable doubt. The State further asserts that the trial court imposed a legal sentence. As such, the State opines that appellate counsel sufficiently complied with the applicable procedures to withdraw from the case.

When counsel files an *Anders* brief, an appellate court reviews several items: a) the bill of information to ensure that the charge is proper, b) all minute entries to ensure that defendant was present at all crucial stages of the prosecution, c) all pleadings in the record, and d) all transcripts to determine whether any ruling of the trial court provides a basis for appeal. *State v. Muth*, 17-135 (La. App. 5 Cir. 10/25/17), 231 So.3d 887, 892. Our independent review of the record supports appellate counsel's assertion that there are no non-frivolous issues to be raised on appeal.

The bill of information properly charged defendant and concisely stated the essential facts constituting the charged offense. It also sufficiently identified defendant and the crime charged. *See generally* La. C.Cr.P. arts. 464-466. As reflected by the minute entries, defendant and his counsel appeared at all crucial stages of the proceedings against him, including his arraignment, trial, verdict, and sentencing.

Defense counsel filed omnibus motions, including motions to suppress the evidence, identification, and statement. The omnibus motion also included:

Defendant's Request for Discovery and Bill of Particulars; Motion for Preliminary Examination; Motion for Reasonable Notice of Trial Date; and Motion for Discovery of Defendant's Statement. Defendant also filed a Motion to Quash.

The trial court held a motions hearing on February 7, 2024, prior to trial. The transcript from the hearing reflects that the trial court denied the motions to suppress statement and evidence, and denied the motion to quash.[4] It appears the trial court did not rule on other defense motions. But when a defendant does not object to the trial court's failure to rule on a motion prior to trial, the motion is considered waived. *State v. Bradley*, 22-191 (La. App. 5 Cir. 12/21/22), 356 So.3d 485, 496, *writ denied*, 23-147 (La. 10/31/23), 372 So.3d 808. The record does not reflect that defendant objected to the trial court's failure to rule on each motion. As such, the motions not ruled on were waived.

A trial court is afforded great discretion when ruling on a motion to suppress, and its ruling will not be disturbed absent an abuse of that discretion. *State v. Jaramillo*, 23-322 (La. App. 5 Cir. 2/28/24), 382 So.3d 1072, 1079, *writ denied*, 24-367 (La. 10/8/24), 394 So.3d 267. In determining whether the trial court's ruling on a motion to suppress is correct, an appellate court is not limited to the evidence presented at the motion to suppress hearing; it also may consider pertinent evidence presented at trial. *Id.*

Officer Bloomer testified that he found the suspect in a parking lot approximately an eighth of a mile away, activated the lights of his marked unit, approached the suspect, and asked him to step to his car. The suspect complied and put the bottle of Coke on the car. Officer Bloomer said he spoke to the suspect briefly and as he went to handcuff the suspect, the suspect turned and struck him in

---

[4] There is an apparent discrepancy between the minute entry and transcript as to which suppression motions were resolved. Generally, where there is an inconsistency between the minute entry and the transcript, the transcript prevails. *See State v. Lynch*, 441 So.2d 732, 734 (La. 1983). Further, there does not appear to be an identification at issue here.

the forehead with his left arm. Officer Bloomer recalled that the suspect backed away from him and was yelling, although initially he was cooperative.

Officer Bloomer stated that he gave several verbal commands to defendant to get on the ground and put his hands behind his back, but the suspect repeatedly refused. Officer Bloomer deployed his taser, and the suspect fell to the ground. Detective Dave Darwin and Lieutenant Eric Crovetto assisted Officer Bloomer in handcuffing him. After he was handcuffed, the suspect stated that he had narcotics and two needles in his pocket. Officer Bloomer stated that the suspect was not asked any questions but that he volunteered the information. The suspect was then searched for safety reasons. Officer Bloomer identified defendant as the suspect and testified that after defendant was handcuffed, he was irate, violent, and uncooperative, yet he was awake, alert, and talking. Defendant laid on his side until he was transported by EMS to the hospital. Officer Bloomer testified that he did not ask defendant any questions while he lay on the ground.

As to the motion to suppress defendant's statement, the State has the burden of proving the admissibility of a purported confession or statement by the defendant. La. C.Cr.P. art. 703(D); *State v. Scott*, 22-330 (La. App. 5 Cir. 3/15/23), 360 So.3d 92, 100, *writ denied*, 23-554 (La. 1/10/24), 376 So.3d 138. The trial court's denial of a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. *State v. Chester*, 19-363 (La. App. 5 Cir. 2/3/21), 314 So.3d 914, 944, *writ denied*, 21-350 (La. 6/8/21), 317 So.3d 321. Before an inculpatory statement made during a custodial interrogation may be introduced into evidence, the State must prove, beyond a reasonable doubt, that the defendant was first advised of his *Miranda*[5] rights, that he voluntarily and intelligently waived them, and that the statement was

---

[5] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducements, or promises. *Id*.

Spontaneous and voluntary statements, not given as a result of police interrogation or compelling influence, are admissible without *Miranda* warnings even where a defendant is in custody. *Chester*, 314 So.3d at 949. Police officers are not obliged to ignore spontaneous and unsolicited statements by someone in custody, as long as the statements do not result from police-initiated custodial interrogation or questioning "reasonably likely to elicit an incriminating response." *Id*. Even if a suspect is in custody, one's spontaneous statements need not be suppressed because they are not the product of custodial interrogation. *Id*.

The testimony adduced at the suppression hearing established that defendant's statement that he had narcotics and needles was uttered spontaneously and was not the product of a custodial interrogation or the result of questioning. Accordingly, the denial of defendant's motion to suppress statement does not present an issue for appellate review.

As to the motion to suppress evidence, the motion neither specifies what evidence is at issue nor states a reason for suppression. Based on the evidence introduced at trial, the evidence at issue is likely the bag of methamphetamine located in defendant's pocket. When the constitutionality of a warrantless search or seizure is placed at issue by a motion to suppress evidence, the State bears the burden of proving that the search and seizure were justified pursuant to one of the exceptions to the warrant requirement. *See* La. C.Cr.P. art. 703(D); *State v. Brown*, 17-420 (La. App. 5 Cir. 2/21/18), 239 So.3d 455, 461, *writ denied*, 18-480 (La. 1/18/19), 262 So.3d 281.

The right of law enforcement officers to stop and interrogate those reasonably suspected of engaging in criminal activity is recognized by La. C.Cr.P. art. 215.1, and is well established in state and federal jurisprudence. *See Terry v.*

*Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Belton*, 441 So.2d 1195 (La. 1983), *cert. denied*, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). The *Terry* standard, as codified in La. C.Cr.P. art. 215.1, authorizes police officers to stop a person in a public place whom they reasonably suspect is committing, has committed, or is about to commit an offense and demand that the person identify himself and explain his actions. *State v. Abrego*, 21-166 (La. App. 5 Cir. 12/1/21), 334 So.3d 883, 888, *writ denied*, 21-1949 (La. 2/22/22), 333 So.3d 450. Reasonable suspicion, which is something less than probable cause to arrest, requires police officers to have sufficient knowledge of facts and circumstances to justify an infringement of the individual's right to be free from government interference. *Id*. at 888-89. Absent reasonable suspicion, an investigatory stop is illegal, and the evidence seized as a result is inadmissible. *Id*. at 889.

An officer may make a warrantless arrest when the officer has probable cause to believe that the person to be arrested has committed an offense. *State v. Barker*, 19-223 (La. App. 5 Cir. 12/11/19), 285 So.3d 581, 589-90. An arrest occurs when the circumstances indicate an intent to effect an extended restraint on the liberty of the accused, rather than at the precise time an officer tells an accused he is under arrest. *State v. McKnight*, 22-499 (La. App. 5 Cir. 5/24/23), 366 So.3d 798, 804. Probable cause to arrest exists when facts and circumstances within an officer's knowledge, and of which he has reasonable, trustworthy information, are sufficient to justify a man of average caution in believing that the person to be arrested has committed a crime. *Id*.

Here, Officer Bloomer properly stopped defendant in public and reasonably suspected that he stole a drink from the gas station. Defendant was in the area, matched the description from the cashier, and was holding the stolen item. The stolen Coca-Cola still had condensation on it, indicating that it was recently removed from a cooler. While conducting that proper stop, defendant

spontaneously indicated that he had narcotics and needles in his pocket. Based on defendant matching the description of the suspect of the gas station theft and his statement that he had narcotics, Officer Bloomer had probable cause to arrest defendant. Even if defendant was not actually arrested at that time, Officer Bloomer lawfully searched defendant's pocket. *See Barker*, 285 So.3d at 589-90.[6] Here, the denial of the motion to suppress evidence fails to present an issue for appellate review.

In the motion to quash the bill of information, defendant argued that he should be immune from prosecution based on La. R.S. 14:403.10 (B) because he was suffering from a drug-related overdose and was in need of medical assistance. At the February 7, 2024 hearing, the prosecutor argued that the statute did not apply because defendant was actively committing crimes while under the influence. She asserted that the statute contemplates someone overdosing who calls for help while in possession of drugs. The prosecutor explained that the person in such a scenario would be immune from prosecution because he needed medical assistance. She contended that defendant was not protected by the statute because he was coherent, initially cooperative, not falling asleep, and could stand.

Defense counsel responded that the relevant portion of the statute pertained to individuals overdosing and requiring medical attention. He then asked to supplement the record with defendant's medical record for appeal purposes. Counsel stated that it is not up to the court to determine whether defendant was

---

[6] In *Barker*, this Court explained that an officer had reasonable suspicion to stop the defendant and the co-defendant based on information from a confidential informant that the defendant would be delivering methamphetamine. The co-defendant waived his *Miranda* rights and said the defendant asked him to travel with him to deliver the methamphetamine, which was in his backpack. This Court found that at that point in the investigation, the detective had probable cause to arrest both the co-defendant, who admitted that he had the drugs, and the defendant, as it was clear that they were working together to distribute the methamphetamine. This Court stated that the search of the co-defendant's backpack, which was not performed before the statement that the backpack contained drugs, and which yielded the only contraband in this case, was a lawful search incident to arrest in order to prevent the removal or destruction of evidence from the scene.

overdosing, and the statute does not give guidance on what constitutes an overdose. Counsel averred that the overdose does not need to be life-threatening. He explained that defendant went to the hospital, where he tested positive for a high level of amphetamines. The judge denied the motion to quash.

A motion to quash is a procedural vehicle for challenging an indictment or a bill of information. La. C.Cr.P. arts. 531-533. *State v. Seymore*, 23-50 (La. App. 5 Cir. 9/20/23), 371 So.3d 587, 590-91. A trial court's ruling on a motion to quash should not be reversed in the absence of a clear abuse of the trial court's discretion. *State v. Robinson*, 23-59 (La. App. 5 Cir. 3/20/24), 384 So.3d 1078, 1087-88, *writ denied*, 24-508 (La. 11/6/24), 395 So.3d 872.

La. R.S. 14:403.10 (B) states:

> (1) A person who experiences a drug-related overdose and is in need of medical assistance shall not be arrested, charged, prosecuted, or penalized for possession or use of a controlled dangerous substance under the Uniform Controlled Dangerous Substances Law or for possession of drug paraphernalia as defined in R.S. 40:1021 if the evidence for such offenses was obtained as a result of the overdose and the need for medical assistance.

> (2) Any such person shall not be subject to the following, if related to seeking medical assistance:

> (a) Sanctions for a violation of a condition of pretrial release, condition of probation, or condition of parole, related to the incident which required medical assistance as provided in Paragraph (1) of this Subsection.

> (b) Civil forfeiture of property, related to the incident which required medical assistance as provided in Paragraph (1) of this Subsection.

As written, La. R.S. 14:403.10 (B) establishes a three-prong test for determining whether the immunity it establishes applies. *State v. Jago*, 16-346 (La. App. 5 Cir. 12/28/16), 209 So.3d 1078, 1082, *writ denied*, 17-183 (La. 11/17/17), 228 So.3d 1218. The person in possession of the controlled dangerous substance must be experiencing an "overdose"; the person must be in need of medical

assistance; and the evidence of the controlled dangerous substance must have been obtained as a result of the overdose *and* the need for medical assistance. *Id*. The Louisiana Supreme Court has clarified that for the purpose of applying La. R.S. 14:403.10, "overdose" means an acute medical condition, including but not limited to extreme physical illness, decreased level of consciousness, respiratory depression, coma, mania, hysteria, or death that is the result of consumption or use of a controlled dangerous substance, or a condition a lay person would reasonably believe was a drug-related overdose. *State v. Rowe*, 22-206 (La. 12/9/22), 354 So.3d 1187, 1195.

Here, the trial court did not abuse its discretion in denying the motion to quash. First, no evidence established that defendant was experiencing extreme physical illness, decreased level of consciousness, respiratory depression, coma, mania, or hysteria, and thus it was not established that he was overdosing. Rather, the evidence showed that defendant was fully conscious and capable of walking an eighth of a mile. While defendant did receive medical attention, and the medical records indicate that he had amphetamines in his system, the medical attention was necessary at least in part to remove the taser prongs. Finally, the methamphetamine was not located because of an overdose and medical assistance, but because defendant committed a theft and then informed the officer that he had narcotics. As such, the three-prong immunity test under La. R.S. 14:403.10(B) was not met. The trial court did not err in denying the motion to quash, and the motion to quash does not present an issue for appellate review.

Additionally, the State filed a notice of intent to call an expert witness and to use *res gestae* evidence; the State also requested simultaneous trials. These motions were not argued, yet the trial court granted them. Defense counsel

objected. Regarding the expert, at trial the parties stipulated as to the expert's testimony. Thus, defendant waived any objection on the matter.[7]

Further, the evidence of the theft of the Coca-Cola, the simple battery of the store clerk, and the battery of a police officer constituted integral-act evidence (formerly referred to as *res gestae* evidence). *Res gestae* events constituting other crimes are deemed admissible because they are so nearly connected to the charged offense that the State could not accurately present its case without reference to them. *State v. Frickey*, 22-261 (La. App. 5 Cir. 3/1/23), 360 So.3d 19, 49, *writ denied*, 23-468 (La. 11/8/23), 373 So.3d 59. The *res gestae* doctrine is broad and includes not only spontaneous utterances and declarations made before or after the commission of the crime, but also testimony of witnesses and police officers pertaining to what they heard or observed during or after the commission of the crime, if a continuous chain of events is evident under the circumstances. *Id.* The test of *res gestae* evidence is not simply whether the State might somehow structure its case to avoid any mention of the uncharged act or conduct, but whether doing so would deprive its case of narrative momentum and cohesiveness, with power not only to support conclusions, but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict. *Id.*

The evidence related to defendant's misdemeanor charges was so nearly connected to the charged offense that the State could not accurately present its case without reference to the theft and simple battery, which led to defendant being stopped and the methamphetamine being discovered, or the battery of a police

---

[7] A stipulation has the effect of withdrawing a fact from issue and disposing wholly with the need for proof of that fact. *State v. Simmons*, 00-35 (La. App. 5 Cir. 7/25/00), 767 So.2d 860, 861. A stipulation has the effect of binding all parties and the court. Such agreements are the law of the case. *See State v. Seals*, 09-1089 (La. App. 5 Cir. 12/29/11), 83 So.3d 285, 321, *writ denied*, 12-293 (La. 10/26/12), 99 So.3d 53, *cert. denied*, 569 U.S. 1031, 133 S.Ct. 2796, 186 L.Ed.2d 863 (2013).

officer, which occurred as defendant was being handcuffed moments before defendant stated he had methamphetamine on him. As such, admission of the other-crimes evidence does not present an issue for appellate review. Further, as to the simultaneous bench and jury trials, even if this was error, the evidence of the other offenses was admissible as *res gestae* evidence at the felony trial. The decision to hold simultaneous trials does not present an issue for appellate review.

The record further reflects that the jury was properly comprised of six members, and the jury reached a unanimous verdict. *See* La. C.Cr.P. art. 782.

Our review of the record shows that the evidence presented was not insufficient under the *Jackson*[8] standard to establish the essential statutory elements of possession of methamphetamine weighing less than two grams. *State v. Raymo*, 419 So.2d 858, 861 (La. 1982).[9] The evidence established that a substance that tested positive as .71 grams of methamphetamine was found in defendant's pocket.

We next consider whether the sentence the trial court imposed is excessive. Defendant was convicted of possession of methamphetamine weighing less than two grams in violation of La. R.S. 40:967(C)(1). As such, the sentencing range was imprisonment with or without hard labor for up to two years. Additionally, the trial court could have imposed a fine of up to $5,000.

At the sentencing hearing, the prosecutor explained that defendant was convicted: in January 2011 for possession with intent to distribute marijuana; in February 2011 for possession of narcotics; in September 2019 for possession of methamphetamine; and in August 2020 for possession of methamphetamine. The

---

[8] *See also Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which states: "The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

[9] In *Raymo*, the Louisiana Supreme Court held that "[b]ecause the state's case was devoid of evidence of an essential element of the charged offense ... defendant's conviction and sentence must be set aside ... regardless of how the error is brought to the attention of the reviewing court."

prosecutor indicated that the State did not intend to file a multiple bill, but if it had done so, defendant would be a third-felony offender. Defendant was then sentenced to two years imprisonment at hard labor with the Department of Corrections, with credit for time served. Defense counsel and defendant explained that after he was arrested, he was placed on a psychiatric hold for nine days. No fine was imposed. As such, he was sentenced to the maximum term of imprisonment but not the maximum sentence.

The Eighth Amendment to the U.S. Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. *State v. Haynes*, 23-494 (La. App. 5 Cir. 7/31/24), 392 So.3d 1160, 1164. A sentence is considered excessive, even when it is within the applicable statutory range, if it makes no measurable contribution to acceptable goals of punishment and is nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime. *Id*. A sentence is grossly disproportionate if it shocks the sense of justice when the crime and punishment are considered in light of the harm done to society. *Id*.

In reviewing a trial court's sentencing discretion, three factors are considered: 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts. *State v. Fuentes*, 23-502 (La. App. 5 Cir. 7/31/24), 392 So.3d 1167, 1173. However, there is no requirement that specific matters be given any particular weight at sentencing. *Id*. The trial judge is granted great discretion in imposing a sentence, and sentences will not be set aside as excessive absent clear abuse of that broad discretion. *State v. Mejia*, 23-161 (La. App. 5 Cir. 11/29/23), 377 So.3d 860, 888, *writ denied*, 23-1722 (La. 5/29/24), 385 So.3d 705. Generally, maximum sentences are reserved for cases involving the most serious violations of the offense charged and the worst type of offender. *Id*.

Regarding the nature of the crime and the background of the offender, the record provides little information other than that defendant apparently was under the influence of amphetamines at the time of the offense. He also may have been experiencing a mental health issue, based on his psychiatric hold following the incident. Defendant has four prior drug-related convictions and could have been adjudicated and sentenced as a third-felony offender. During the charged incident, defendant stole a Coke and pushed the cashier with a door. Defendant had two needles in his pocket. He also committed several misdemeanors, including battery of a police officer.

In *State v. Gassenberger*, 23-148 (La. App. 5 Cir. 12/20/23), 378 So.3d 820, this Court upheld a two-year sentence at hard labor for possession of methamphetamine weighing less than two grams. Other courts have upheld similar sentences. *See State v. Grant*, 55,592 (La. App. 2 Cir. 4/10/24), 384 So.3d 1159; *State v. Guillory*, 21-590 (La. App. 3 Cir. 3/9/22), 350 So.3d 893; *State v. Durham*, 53,922 (La. App. 2 Cir. 6/30/21), 321 So.3d 525; *State v. Johnson*, 35,908 (La. App. 2 Cir. 4/3/02), 813 So.2d 1180. The sentence imposed does not present any non-frivolous issues for appeal.

Because appellate counsel's brief adequately demonstrates by full discussion and analysis that she reviewed the trial court proceedings and cannot identify any basis for a non-frivolous appeal, and because our independent review of the record supports counsel's assertion, we grant appellate counsel's motion to withdraw as attorney of record.

*Errors Patent*

Defendant requests an error patent review. This Court routinely reviews the record for errors patent in accordance with La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5 Cir.

1990), whether or not defendant makes such a request. Our review reveals no errors patent in this case.

CONCLUSION

For the foregoing reasons, we affirm defendant's conviction and sentence. In a separate Order, we grant defense counsel's motion to withdraw.

**<u>AFFIRMED</u>**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**FEBRUARY 5, 2025** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

CURTIS B. PURSELL
CLERK OF COURT

## 24-KA-178

### E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE FRANK A. BRINDISI (DISTRICT JUDGE)
KATHERINE M. FRANKS (APPELLANT)      ANDREA F. LONG (APPELLEE)      BROOKE A. HARRIS (APPELLEE)
THOMAS J. BUTLER (APPELLEE)

### MAILED

CHAD M. IKERD (APPELLANT)          HONORABLE PAUL D. CONNICK, JR.
ATTORNEY AT LAW                     (APPELLEE)
IKERD LAW FIRM                      DISTRICT ATTORNEY
600 JEFFERSON STREET                MOLLY LOVE (APPELLEE)
SUITE 903                           ASSISTANT DISTRICT ATTORNEY
LAFAYETTE, LA 70501                 TWENTY-FOURTH JUDICIAL DISTRICT
                                    200 DERBIGNY STREET
                                    GRETNA, LA 70053